*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0343p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-6226

MARY A. KIRBY,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 03-05053—R. Allan Edgar, Chief District Judge.

Argued: April 27, 2005

Decided and Filed: August 15, 2005

Before: DAUGHTREY and GIBBONS, Circuit Judges; SARGUS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, Greeneville, Tennessee, for Appellant. Michael E. Winck, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, Greeneville, Tennessee, for Appellant. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Mary A. Kirby appeals from the district court's revocation of her supervised release and its subsequent imposition of twenty months imprisonment. At the revocation hearing, Kirby admitted that she violated certain terms of her supervised release, namely that she had left the judicial district, did not truthfully answer questions from her probation officer, and did not submit truthful reports to her probation officer. Kirby's probation officer also alleged that she had committed additional crimes by passing or attempting to pass several stolen checks. The probation officer testified to Kirby's additional criminal conduct at the revocation hearing. Based on this testimony, the district court found that Kirby had engaged in additional

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

criminal conduct. The district court revoked Kirby's supervised release. It sentenced her to twenty months imprisonment, the statutory maximum, and an upward departure from the advisory policy statements set forth in the Sentencing Guidelines for her violations. Kirby filed a timely notice of appeal. For the following reasons, we affirm the district court's decision.

I.

Kirby was convicted of possession and theft of mail matter in violation of 18 U.S.C. § 1708 in the Northern District of Georgia. She was sentenced to eighteen months imprisonment to be followed by three years of supervised release. Kirby was released from prison on May 2, 2002, and her supervised release began on that day. Jurisdiction over Kirby's case was transferred to the Eastern District of Tennessee on January 23, 2003.

After her release from prison, Kirby started working at an Eckerd Drugs in Chattanooga, Tennessee. In November 2002, Kirby informed her probation officer that she had quit her job at Eckerd to begin working at Southern Medical Supply. In her written monthly report, she stated that she had been fired from Eckerd for missing too many days of work. Kirby's probation officer spoke with an Eckerd manager, who told the probation officer that Kirby had actually been terminated for making fraudulent refunds. Kirby's actions cost Eckerd $243.36. In lieu of prosecution, Eckerd agreed to accept a promissory note from Kirby for $243.36.

Kirby reported to the United States Probation Office after this incident. She initially denied taking the money from her employer; however, she eventually admitted both that she stole the money and that she did not provide truthful information to her probation officer. As a result of her breach of the conditions of supervised release, the government offered Kirby the option of halfway house placement instead of revocation of her supervised release. The court subsequently modified Kirby's supervised release on January 9, 2003, requiring her to reside at the Salvation Army Comprehensive Sanction Center for three months.

On March 27, 2003, Kirby was spotted taking a box containing thirty-six packs of Yu-Gi-Oh cards from the Golden Gallon in Chattanooga. Kirby did not pay for the items, which were valued at $143.64. She was arrested that same day and charged with theft of property.

On April 10, 2003, Kirby pled guilty to theft of property in the Hamilton County General Sessions Court. She was sentenced to eleven months and twenty-nine days, suspended upon payment of a fine and costs and conditioned on good behavior for eleven months and twenty-nine days.

Kirby's conviction in the Tennessee state court resulted in the revocation of her term of supervised release related to her federal conviction on May 5, 2003. She was sentenced to four months of imprisonment followed by thirty-two months of supervised release.

Kirby was released from the federal prison on July 29, 2003. She then began serving her second term of supervised release.

On August 17, 2004, Kirby's probation officer petitioned the court for a warrant for her arrest. The petition alleged that Kirby violated the terms of her supervised release by committing other crimes. Specifically, it alleged that Kirby cashed a stolen check in the amount of $2,892.40 at AmSouth Bank in Whitwell, Tennessee on July 1, 2004. Law enforcement authorities and bank officials issued a fraud alert on Kirby as a result of her passing this stolen check; the alert resulted in Kirby's being identified as having passed other stolen checks (valued at $985.47, $806.45, and $273.11) in Georgia during February and March 2004. Additionally, a surveillance video captured

Kirby trying to pass a stolen check at a K-Mart in Dalton, Georgia in April 2004; K-Mart employees became suspicious and would not accept the check.[1]

The petition also alleged that Kirby violated the conditions of her release by leaving the judicial district without permission of the court or her probation officer and by being untruthful in her monthly reports regarding whether she had left the judicial district. Store surveillance videos in Georgia showed that Kirby had traveled outside of the Eastern District of Tennessee. Kirby answered "no" to a question in her monthly supervision report asking if she had been outside of the judicial district.

Finally, the petition alleged that Kirby was untruthful with her probation officer. Specifically, Kirby told her probation officer that she had a trust fund established with her attorney valued at over $400,000, with the money coming from the sale of property owned by her mother. Kirby's attorney denied holding a trust for Kirby and stated that, as far as he knew, no trust fund existed containing money from the sale of property owned by Kirby's mother. The petition also indicated that Kirby was untruthful with her probation officer because she denied traveling out of the state and also denied passing any checks that were not payable to her.

The district court issued a warrant for Kirby's arrest and ordered Kirby to appear in court for a revocation hearing. At the revocation hearing, Kirby admitted that she violated certain terms of her supervised release, namely that she had left the district, did not truthfully answer questions from her probation officer, and did not submit truthful reports. These were Grade C technical violations, with a guideline range of three to nine months imprisonment. *See* U.S.S.G. § 7B1.4(a). Kirby invoked her Fifth Amendment right not to answer the court's question regarding whether or not she violated the terms of her supervised release by passing stolen checks. The alleged violation of state law was a Grade B violation with a guideline range of four to ten months imprisonment. *Id.*

The government called probation officer Anthony Green to testify about Kirby's criminal conduct. Green personally reviewed the surveillance tapes and identified Kirby as the person passing a stolen check at the AmSouth Bank in Whitwell, Tennessee and as the person passing stolen checks at several businesses in Georgia. Green also identified Kirby as the person attempting to pass a stolen check at the K-Mart in Dalton, Georgia and referenced the fact that the license plate number on the vehicle driven by the person attempting to pass the stolen check was registered to Kirby's husband. Green testified that law enforcement believed that the checks were stolen because they were made payable to companies rather than to the defendant. Some had been modified such that an individual's name was typed above the company name as a payee.

The district court found by a preponderance of the evidence that Kirby violated the conditions of her supervised release by passing stolen checks, leaving the district without permission, not submitting truthful reports, and not truthfully answering questions from the probation officer. As a result of these violations, the district court revoked Kirby's supervised release.

Kirby's attorney argued that Kirby should be sentenced below or within the guideline range of four to ten months of imprisonment. The government argued that Kirby should be sentenced

---

[1]The K-Mart employees obtained the license plate number of the car driven by the woman who attempted to pass the stolen check. The license plate number came back as registered to Roy Hunt, who is Kirby's husband. Kirby listed in her monthly supervision reports the vehicle associated with this license plate number as the vehicle she drove.

above the recommended sentencing range at the statutory maximum of twenty months.[2] The district court agreed with the government. It stated:

> Ms. Kirby, I've revoked you before and I gave you four months to be followed by 32 months of supervised release. And you were in for theft, basically, what's alleged, and as I've already concluded, has been proven here by a preponderance of the evidence that you have been cashing stolen checks. You were involved in other fraudulent activity the last time that you were here, the Eckerd's incident, and the Golden Gallon incident. And now a number of check incidents. And apparently, you haven't gotten yourself – you haven't got your head straight. And it's very frustrating to this Court to see you out doing the very same thing, the very same thing that you were originally convicted down there in Georgia. And this Court, this Court has to take action here, because the public needs to be protected from you because you're a threat to the public, to people who engage in financial transactions and people in retail stores and banks who cash checks, and, also, the businesses who write checks. We cannot have people engaged in this kind of conduct.

For these reasons, it concluded that the statutory maximum, rather than the recommended sentence in the policy statements, was appropriate for a sentence.

Kirby filed a timely notice of appeal.

## II.

This court reviews a district court's revocation of supervised release for an abuse of discretion. *United States v. Webb*, 30 F.3d 687, 688 (6th Cir. 1994). The revocation of supervised release and imposition of imprisonment should be affirmed if the district court's decision "shows consideration of the relevant statutory factors" and if the sentence imposed is not "plainly unreasonable."[3] *United States v. McClellan*, 164 F.3d 308, 309 (6th Cir. 1999).

The district court must consider the policy statements set forth in Chapter Seven of the Sentencing Guidelines prior to imposing a sentence. *Id.* at 310. The policy statements, however, are merely advisory. *Id.* The district court is also required to consider the factors listed in 18 U.S.C. § 3553(a). *Id.* The court need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review. *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998).

In this case, the policy statements recommend three to nine months imprisonment for the Grade C technical violations to which Kirby admitted. The policy statements recommend four to ten months imprisonment on the Grade B violation of violating state law. U.S.S.G. § 7B1.4(a). The district court imposed the statutory maximum sentence of twenty months imprisonment, as it was allowed to do given the advisory nature of the policy statements.

On appeal, Kirby does not contest that revocation of her supervised release was appropriate given that she admitted to certain violations of her supervised release. Rather, she contends that the

---

[2]The statutory maximum was twenty months, rather than twenty-four months, because Kirby already served a term of four months after her supervised release was revoked in 2003. *See* 18 U.S.C. § 3583(e)(3).

[3]We need not consider whether *United States v. Booker*, 125 S. Ct. 738 (2005), requires the court to apply a reasonableness standard instead of a plainly unreasonable standard. *See United States v. Johnson*, 403 F.3d 813, 817 (6th Cir. 2005) (declining to decide whether *Booker* changed the standard of review from plainly unreasonable to reasonableness). Under either standard, we would affirm the district court's decision.

district court's sentence was plainly unreasonable. In so doing, she argues that the district court erred when it relied solely on the testimony of her probation officer to find that she engaged in additional criminal conduct. She also argues that *Crawford v. Washington*, 541 U.S. 36 (2004), applies to revocation hearings and that her constitutional right to confrontation was violated when her probation officer testified to hearsay statements made by police officers and victims of her criminal conduct. Kirby's arguments are meritless.

The district court did not err in relying solely on the testimony of the probation officer to establish that Kirby had committed crimes while on supervised release. The probation officer personally reviewed surveillance tapes from businesses at which Kirby had passed stolen checks during five separate incidents. Based on his personal review of the videotapes, he identified Kirby as the individual passing the stolen checks. He also related that K-Mart employees in Dalton, Georgia obtained Kirby's license plate number after she left the store and passed that number on to law enforcement authorities. Finally, upon questioning by the court, the probation officer stated that he knew that the checks being passed by Kirby were stolen because the agents involved in investigating the incidents told him that the checks had been made payable to companies and then modified.

The probation officer's testimony reflects that he engaged in an independent and thorough investigation of allegations that Kirby had committed crimes while on supervised release. There is no precedent requiring the government to offer more evidence than that offered by the probation officer in this case. Further, Kirby's case is markedly different from the cases she cites in which this court rejected probation officers' testimony about additional criminal conduct. In *United States v. Lowenstein*, this court held that the petition compiled by the probation officer to modify the terms of the defendant's supervised release lacked any indicia of reliability because it merely stated that the defendant had left the judicial district on a certain date. 108 F.3d 80, 83-84 (6th Cir. 1997). The petition failed to mention the factual basis for the probation officer's belief that the defendant had left the district. *Id.* at 84. In contrast, the probation officer in Kirby's case not only asserted that Kirby had engaged in additional criminal conduct, but also testified that he had spoken with agents investigating the case and personally reviewed at least five videotapes showing Kirby passing the stolen checks. In *Taylor v. United States Parole Commission*, also cited by Kirby, this court held that the Parole Commission abused its discretion when it decided to revoke the defendant's parole based solely upon a probation officer's letter summarizing an arrest report. 734 F.2d 1152, 1156 (6th Cir. 1984). In contrast to *Taylor*, the probation officer in this case actually testified at the hearing. Further, he undertook an independent investigation of the alleged criminal conduct rather than simply relating the contents of an arrest report. For these reasons, the district court did not err in relying solely on the testimony of the probation officer when it determined that Kirby engaged in additional criminal conduct.

Next, Kirby contends that her right to confrontation was violated when the probation officer testified to out-of-court statements made by police officers and others familiar with her case. She relies on the rule set forth in *Crawford*, in which the Supreme Court held that testimonial, out-of-court statements could only be admitted against an accused if the declarant was unavailable and the accused had been given a prior opportunity to cross-examine the declarant. 541 U.S. at 68. This court later defined testimonial evidence as statements made to authorities with the full understanding that such statements will be used in the investigation and prosecution of a crime. *United States v. Cromer*, 389 F.3d 662, 673-74 (6th Cir. 2004).

It is an open question in this circuit whether the rule announced in *Crawford* applies to revocation of supervised release hearings. Two circuits have held that *Crawford* does not apply to these hearings. In *United States v. Martin*, the Eighth Circuit reasoned that *Crawford* did not apply during a revocation hearing because "the constitutional standard applicable in this type of post-conviction revocation hearing will sometimes permit the admission of evidence that would otherwise

be inadmissible in a criminal prosecution." 382 F.3d 840, 844 (8th Cir. 2004). In *United States v. Aspinall*, the Second Circuit declined to apply *Crawford* in the context of a revocation hearing. 389 F.3d 332 (2d Cir. 2004), *abrogated on other grounds as recognized in United States v. Fleming*, 397 F.3d 95, 99 n.5 (2d Cir. 2005). The court held that the Confrontation Clause by its terms applied only to criminal prosecutions. *Id.* at 342-43. It relied on the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471 (1972), which established that revocation hearings are not criminal prosecutions and therefore the defendant was not entitled to the "full panoply of rights due a defendant" in criminal proceedings. *Id.* at 342 (quoting *Morrissey*, 408 U.S. at 480).

We agree with the Second and Eighth Circuits and hold that *Crawford* does not apply to revocation of supervised release hearings. In so holding, we are persuaded by the following considerations. First, *Crawford* was an interpretation of the Sixth Amendment. The text of the Sixth Amendment specifically states that it applies "[i]n all criminal prosecutions." In *Morrissey*, the Supreme Court observed that "there is no thought to equate . . . [a] parole revocation to a criminal prosecution in any sense." 408 U.S. at 489; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution . . . ."). Further, we have held that Confrontation Clause protections do not extend to sentencing hearings. *United States v. Silverman*, 976 F.2d 1502, 1514 (6th Cir. 1992) (en banc) (discussing the "inapplicability of the Confrontation Clause to the sentencing procedure"). This precedent establishes that the protections of the Sixth Amendment do not extend to revocation hearings or other sentencing proceedings. Second, it is well-established that the court may consider evidence at a revocation hearing that would be inadmissible in a criminal prosecution. *Morrissey* states that the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489. Courts holding revocation hearings consistently have been able to "consider hearsay if it is proven to be reliable." *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991). Finally, there is no indication that the Supreme Court intended *Crawford* to apply to revocation hearings or that the Supreme Court intended to overrule *Morrissey*.

Because we conclude that *Crawford* does not apply to revocation of supervised release hearings, the probation officer could testify to out-of-court statements made by victims and police officers. His testimony relating hearsay statements was admissible under *Stephenson* because it was reliable. *See id.*

Finally, Kirby argues that the district court should have imposed a sentence of three to nine months imprisonment rather than twenty months. Under this court's precedent, the revocation of supervised release and imposition of imprisonment should be affirmed if the district court's decision "shows consideration of the relevant statutory factors" and if the sentence imposed is not "plainly unreasonable." *McClellan*, 164 F.3d at 309. Kirby concedes that the district court considered the relevant statutory factors, but argues that the length of the sentence was plainly unreasonable.

Kirby's case presents the classic situation in which imposition of the statutory maximum sentence upon revocation of supervised release is appropriate. Kirby violated the conditions of her supervised release on two previous occasions when she stole money from her employer and stole merchandise from a business. The second incident led the district court to revoke her supervised release and sentence her to a term of imprisonment. Upon her return to supervised release, Kirby began passing stolen checks and also violated other terms of her supervised release. Kirby not only violated the conditions of her supervised release, she continued to engage in criminal activities similar to the crime for which she was originally convicted. The district court's imposition of the

statutory maximum term of imprisonment was more than justified by Kirby's repeated transgressions.[4]

### III.

For the foregoing reasons, we affirm the district court's decision sentencing Kirby to twenty months imprisonment.

---

[4]After oral argument was heard in this case, Kirby filed a *pro se* supplemental brief asking that the court remand her case for resentencing in light of *Booker*, 125 S. Ct. at 738. We decline to remand Kirby's case. The policy statements set forth in the Guidelines for determining a sentence of imprisonment upon revocation of supervised release are advisory, *see McClellan*, 164 F.3d at 310, and thus there is no concern that the district court committed plain error by sentencing Kirby under a mandatory Guidelines regime, *see United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005).