NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0334n.06
Filed: May 10, 2006

No. 05-1482

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **JEFFERY LEE MOORE**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    KEITH and COLE, Circuit Judges; MILLS, District Judge[*]

   **R. GUY COLE, JR., Circuit Judge.**  Defendant Jeffery Lee Moore pleaded guilty to bank robbery pursuant to a plea agreement and was sentenced by the district court to 180 months in prison.  Moore now appeals his sentence as unreasonable, on the ground that the district court did not adequately consider and discuss Moore's history of mental illness and substance abuse, and on the ground that Moore's sentencing range, which the district court considered as advisory at sentencing, overstates the seriousness of his criminal history.  For the reasons that follow, we affirm the sentence imposed by the district court.

_____

   [*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

I.

Moore admitted to the following facts at the time he entered his guilty plea. Moore walked into a bank in Berrien County, Michigan, approached a teller and asked her for money, and handed her a note that stated, "I have a gun," and, "no dye packs, no tracking devices." Moore was not actually carrying a gun, but put a reference to a gun in the note because other bank robbers "told [him] what to put in there." He admitted that the reason for including mention of a gun was for "intimidation," but insisted that he "was very polite" to the teller.

Moore also admitted to robbing another bank the previous day in South Bend, Indiana. Moore used the $850 obtained from that robbery to purchase an ounce of cocaine, then crossed into Michigan and committed the second robbery. In his plea agreement, Moore agreed to be sentenced as if he had been convicted of an additional count of robbery, in exchange for the U.S. Attorney's Office and Indiana authorities agreeing not to prosecute him for the Indiana robbery.

Moore was apprehended the day after the Michigan robbery, and police recovered approximately $1,742 on his person, which he admitted was from the Michigan robbery. At the time the offenses were committed, Moore had recently been released from prison.

At the time of sentencing, Moore had prior convictions for embezzlement, aggravated robbery, and bank robbery. The embezzlement conviction arose from Moore's stealing an automobile from his place of employment, a car dealership, and selling it for crack cocaine. The prior robberies included stealing money from an open cash register at a gas station and another instance of bank robbery using a note similar to the note used in the instant offense. Moore

committed the instant offense while on supervised release, and less than two years after being released from custody for his prior bank robbery conviction.

The Presentence Investigation Report (PSR) calculated Moore's sentencing range under the U.S. Sentencing Guidelines as follows. Because Moore had two prior felony robbery convictions prior to the instant offense, he met the definition of a career offender under U.S. Sentencing Guideline § 4B1.1. The crime of bank robbery carries a statutory maximum of twenty years, *see* 18 U.S.C. § 2113(a), putting Moore's base offense level as a career offender at thirty-two. *See* U.S.S.G. § 4B1.1(b)(C). A three-level reduction for acceptance of responsibility brought Moore's total offense level to twenty-nine. As a career criminal, Moore's criminal history category was automatically determined to be VI, *see* U.S.S.G. § 4B1.1, resulting in a Guideline range of 151 to 188 months. If Moore were not within the definition of a career criminal, Moore's total offense level would have been twenty-three and his criminal history category would have been V, resulting in a sentencing range of 84 to 105 months.

Moore submitted a letter stating he had no objections to the Guidelines calculations contained in the PSR, but provided "comments" for the court's consideration, including the assertion that his "demeanor was polite, courteous, and quiet throughout" the bank robbery.

Moore has a history of mental health problems, and has participated in mental health evaluations in the context of his prior convictions and sentencings. At Moore's plea hearing in the instant case, the district court sua sponte recommended the performance of a new mental health evaluation to assist with sentencing and prison placement. The PSR summarizes Moore's prior mental health history as well as the results of his most recent evaluation. In the past Moore has been

treated for depression, attention deficit hyperactivity disorder, bipolar disorder, schizoaffective disorder, and borderline personality disorder. Moore stated he has made approximately twenty suicide attempts. Moore also reported that he was sexually abused when he was twelve. In the past Moore has exhibited "attention seeking" behavior; when placed on a one-to-one suicide watch when hospitalized in 1990, he "appeared to enjoy having that level of personal attention."

In connection with the preparation of the PSR, a new mental health evaluation was performed. According to the PSR, Moore did not complete several questions "requiring more introspective responses" and that the "responses he did complete were superficial or flippant." The PSR notes that Moore's profile test results were likely to be invalid. Moore insists that he did his best to participate meaningfully in the evaluation. Moore was diagnosed with cocaine dependence and borderline personality disorder. Moore is described as "very manipulative, and he will go to any length to get what he wants," "will probably continue to act out with suicidal gestures until he is successful," and has a poor prognosis. The PSR also indicates that Moore takes the medications Depakote and Ristereal for mental health issues. Moore has participated in "many substance-abuse programs."

At sentencing, defense counsel did not object to the manner in which the Guideline range was calculated, but requested a sentence below the Guideline range on the ground that the career offender status overstated the seriousness of Moore's criminal record. Counsel emphasized that, although Moore's two prior robberies were considered crimes of violence, Moore did not engage in violent behavior in the commission of either robbery. The district court rejected counsel's arguments. The court observed that the crimes were committed "for purposes of intimidation" and

in that sense were a violent act even though no one was physically hurt. It summarized the facts surrounding Moore's prior convictions, stressing that the crimes all occurred while Moore was under the influence of crack cocaine or in an attempt to obtain money to buy crack cocaine, and that the crimes occurred over a relatively short period of time. The court stated that based upon the narrative, the crimes did not appear to "involve mental health issues," but rather "involved crack cocaine questions."

Upon the court's invitation to present remarks in allocution, Moore's counsel stressed Moore's past history of mental illness, and Moore stressed his drug problems and claimed that he committed these crimes in order to ensure he would go back to federal prison where he could participate in drug treatment programs. Moore also reiterated that he conducted the robberies in as polite a manner as possible.

After hearing a response from the government, the district court imposed a sentence of 180 months, and articulated its reasoning at some length. The court characterized the robbery as an "assault on tellers," rejected the argument that the crime was spur of the moment, and rejected the notion that Moore's crack cocaine problems excused his behavior. The court listed various factors it was considering in imposing the sentence, including the need to provide a just punishment, promote respect for law, protect the public, deter like-minded offenders, and provide opportunities for rehabilitiation. The court made note of Moore's young age and encouraged him to avail himself of rehabilitative programs.

The court recommended that the Bureau of Prisons review Moore's medication regimen and possibly make adjustments, and required Moore to participate in a substance abuse treatment

program for his crack cocaine addiction. The district court also sentenced Moore to three years of supervised release, imposed a fine of $2,000 and a mandatory special assessment of $100, and ordered payment of restitituion for the outstanding balance of Moore's thefts. The court ordered Moore to pay these amounts on a schedule of $25 every two months while in prison, and $100 a month while on supervised release, with interest waived.

**II.**

In reviewing a sentence for reasonableness, this court considers "not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). Moore objects both to the length of his sentence and to the district court's procedure.

Moore argues that the length of his sentence is unreasonable because it is based upon a Guideline range that overstates the seriousness of his criminal history. Moore does not argue that the district court committed an error in calculating his Guideline range, but simply argues against the "mechanical application" of that range in his given circumstances. When a sentence is properly calculated under the Guidelines, however, a rebuttable presumption attaches that the sentence length is reasonable. *United States v. Williams*, 436 F.3d 706, 707-08 (6th Cir. 2006). Moore has not provided an argument sufficient to overcome that presumption.

Moore further argues that the district court did not adequately discuss the factors required under 18 U.S.C. § 3553(a), including his history and characteristics, and specifically his drug addiction and history of mental health problems. Moore's argument fails.

Even when crediting a sentence within the appropriate Guidelines range as presumptively reasonable in length, this court has gone on to determine whether the district court satisfied the procedural requirements of considering the § 3553(a) sentencing factors and providing sufficient analysis to allow for meaningful review. *E.g., Williams*, 436 at 708-09; *United States v. Richardson*, 437 F.3d 550, 553-54 (6th Cir. 2006). A sentencing judge must consider the list of sentencing factors articulated in 18 U.S.C. § 3553(a). *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," *see* § 3553(a)(1), as well as the need for the defendant's sentence "to reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *see* § 3553(a)(2). Courts are also instructed to consider the "kinds of sentences available," the relevant sentencing range, any pertinent policy statements issued by the Sentencing Commission, "the need to avoid unwarranted sentencing disparities," and "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3553(a)(3)–(7). The district court "need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *Kirby*, 418 F.3d at 626. This court upholds a sentence as reasonable where the "record indicates that the district judge carefully reviewed and weighed all the relevant information provided by [the defendant], the government, and the probation office before arriving at [the defendant's] sentence." *Williams*, 436 F.3d at 709; *accord Richardson*, 437 F.3d at 554 (upholding sentence where the district court did not simply

select what it viewed as an appropriate sentence but instead "explicitly considered many § 3553(a) factors in sentencing [the defendant]").

The district court clearly considered Moore's history and characteristics, including his criminal history, his substance abuse, his mental health issues, his age, and his acceptance of responsibility. The district court discussed Moore's criminal history at length, and characterized it as motivated by his crack cocaine use. The district court supported this conclusion by noting the presence of crack cocaine in all of Moore's prior crimes. The transcript also makes clear the reasons the court did not reduce Moore's sentence in light of his crack cocaine use: The court did not believe that substance abuse justified a lower sentence. The court stated, "I have yet to read anything in the literature or in law that indicates that an addiction to crack cocaine is an ameliorating circumstance for an individual to be removed from some kind of responsibility." The court appeared displeased that Moore's prior prison terms were "not sufficient to dissuade the defendant from either using crack or committing robberies." The court also appeared critical of Moore's attitude toward substance abuse treatment programs, stating that "contrary to his view of this process, it is not a matter of enrolling in a course, getting some kind of a magic wand of you're cured and walking away. It's a much longer process of self-examination, addiction being both a physical and a psychological issue."

The record also reveals that the district court specifically considered Moore's mental health history. The district court made reference to Moore's history of mental illness three times during sentencing. The court concluded that the motivation for Moore's crimes "did not involve mental health issues," but rather "involved crack cocaine questions." It stated that the record before the

court was insufficient for establishing a mental health defense "for purposes of ameliorating the consequences of the responsibility for one's actions in this matter." The court also noted that Moore was on a "medication regimen for these apparent mental health issues" even though this fact was raised by neither party. The district court recommended that the Bureau of Prisons review that medication regimen and make appropriate adjustments.

The court also took into account Moore's age, stating it believed "that the sentence of this Court, contrary to Mr. Moore's interpretation, is not that of life because Mr. Moore is thirty-five years of age." The court took into account Moore's financial circumstances by waiving interest on his fines and restitution repayments and by working out a long-term schedule of repayment. The court considered the "rather forthright approach Mr. Moore has taken throughout this whole thing . . . , figuratively speaking, throwing himself on the mercies of this Court." In sum, the record is clear that the district court gave substantial consideration to Moore's history and characteristics, and simply took a different view from the defendant regarding how those factors should affect the sentence.

The same is true for the district court's consideration of the nature and circumstances of the offense. The district court discussed at length the nature and circumstances of Moore's robbery, focusing on the crime as one in a "series of thefts and robberies occurring over a relatively short period of time," and linking the crime to Moore's recent history of crack cocaine binges. The district court characterized the crime as "an assault on tellers, in this case women, who have as their job serving the public," emphasizing the victim's perspective, and rejected Moore's characterization of the crime as "spur-of-the-moment," discussing in detail Moore's method of perpetrating the

offense. The court gave its reasons for rejecting the characterization of the crime as non-violent, noting that even though "no one was shot or hurt," nevertheless "it was an act which was done for purposes of intimidation," and suggesting that the statement "I have a gun" on the robbery note conveyed an implicit threat.

The district court also made explicit reference to the factors listed in § 3553(a)(2)(A), (B), (C), and (D). The court noted that both the "seriousness of th[e] offense" and Moore's forthright acceptance of responsibility were "weighed together to determine what a just punishment is and what kind of a sentence will not only promote respect for law, but also protect the public and serve as a deterrent to others who maybe of a like mind." At the end of its colloquy, the court observed that "in any event, this Court believes that 180 months in the Federal Bureau of Prisons is an appropriate sentence to address all these characteristics in protecting the public, promoting respect for law, and providing an opportunity for rehabilitation."

The district court's articulation of its reasoning was clear and thorough, and therefore clearly satisfied the requirement that it "consider" the § 3553(a) factors.

**III.**

For the foregoing reasons, we affirm the sentence imposed by the district court.