NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0537n.06

Case No. 18-6157

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Oct 21, 2019<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
|  | ) |  |
| GARION LEWIS, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |

Before: COLE, Chief Judge; MERRITT and LARSEN, Circuit Judges.

**MERRITT, Circuit Judge.** This is an appeal by defendant Garion Lewis from a revocation of supervised release. Defendant contends that his due process rights were violated because the district court relied solely on hearsay testimony to revoke his supervised release. Contrary to defendant's arguments, the victim's out-of-court statements to the investigating detective were sufficiently reliable. Because the detailed and corroborated testimony of the investigating detective at the revocation hearing provided proof by a preponderance of the evidence that defendant had committed a crime, we affirm the judgment of the district court.

**I.**

In 2004, the defendant pled guilty to carjacking and to using and discharging a firearm in relation to the carjacking. He was originally sentenced to 130 months' in prison to be followed by

a 60-month supervised release period. The defendant was released from prison and began his term of supervised release on November 26, 2014. He was then arrested again on September 20, 2017. Based on the arrest, the district court revoked his supervised sentenced him to four-and-one-half months' imprisonment followed by a two-year supervised release period. His second term of supervised release, which is the focus of this appeal, began on January 31, 2018.

In May 2018, less than five months into his second term of supervised release, defendant's probation officer reported five violations, including failure to report to the probation officer as required, failing to participate in a substance-abuse and testing program, committing another criminal offense, unlawfully possessing a controlled substance, and owning, possessing or having access to a firearm. Defendant admitted to failing to report to the probation officer and failing to participate in a substance-abuse program, but he denied the last three violations.

The last three violations stemmed from a single incident that was the subject of a revocation hearing held on October 17, 2018. At the supervised-release revocation hearing, Detective Brian Boller of the Chattanooga Police Department testified that he investigated a robbery on May 9, 2018. Boller testified that Ernest Hampton, who lives in South Pittsburg, Tennessee, told him that he was visiting his mother's house in Chattanooga when he saw a man he knew, Tracy Long, talking to someone Hampton did not know. The man he did not know pulled a semiautomatic pistol from a backpack and demanded all of Hampton's property. Hampton gave him cash and an iPhone and the man drove away in a white SUV. Hampton described the man to Boller as a muscular black man about 6 feet tall with dreadlocks. He told Boller the man was wearing blue pajama pants with a green design, blue pants under the pajama pants, a light green shirt with white lettering, and white high-top sneakers. Chattanooga police were given the description and told to "be on the lookout" for the suspect.

Boller testified that shortly after the alert went out to police, two Chattanooga police officers in a marked patrol car saw a man matching the description given by Hampton at a gas station and convenience store. They parked the patrol car and approached the vehicle, but it was unoccupied. The officers went in the store, but the suspect was not inside. They went back to the vehicle and saw a backpack and an open wallet on the passenger seat. Through the window they saw that the license in the open wallet was defendant's. In the open console between the driver and passenger seats, they saw a cellphone and a clear baggie containing a brown substance they believed to be heroin. Based on these plain-view sightings, they then entered the car to retrieve the items. Detective Boller arrived on the scene about this time. Officers found a large quantity of pills in the backpack they believed to be the controlled substances Ecstasy and Xanax.[1] A paper copy of defendant's license was also in the backpack.

Boller reviewed the surveillance tapes from the store where the vehicle was found and related at the hearing what he saw on the tapes. Boller thought the store had three or four various cameras inside and out of the property. On one of the tapes from an outside camera, a man matching the description of the suspect emerges from a white SUV. Another camera in the store shows the same man looking out the store window at something. The man then opens the store door and looks out and "takes off running." An outside camera shows a marked patrol car coming down the street and pulling into the convenience store parking lot. It shows the same man "moving briskly" out of the store, away from the patrol car and then out of the camera's view. Detective Boller also noted that although he did not see a firearm, the man kept his hand on his right pocket, which Boller testified in his experience indicated he probably was holding a firearm. A frame

---

[1] At the time of the revocation hearing, the pills and the substance in the baggie were still undergoing testing and confirmation of their composition had not been received by Detective Boller.

isolated from the video in the store captured a still picture of the suspect. The picture is consistent with the victim's description of the man who robbed him.

Boller went on to testify that when the victim, Hampton, was shown a picture of defendant in a six-person photo array, he was unable to identify defendant. But Hampton called Detective Boller later that day and said he found the person who robbed him on Facebook because they were both "friends" with Tracy Long. Hampton also identified the white SUV, and he recognized the backpack from the SUV as matching the one from which the suspect had pulled the gun. It was also verified that the cellphone found in the white SUV was Hampton's. It was also established through Boller's testimony that the white SUV was registered to defendant's girlfriend and that she allowed him to drive it. Boller was the only witness for the government. Defendant cross-examined Boller at the revocation hearing, but he did not testify or call any witnesses.

At the end of revocation hearing, the district court entered an order revoking defendant's supervised release. Relying on the testimony of Detective Boller, the district court found by a preponderance of the evidence that the defendant had violated his supervised release by committing the aggravated robbery of Hampton. The court also found the defendant violated his supervised release terms by possessing controlled substances and possessing a firearm. Defendant was sentenced to 24 months' imprisonment, at the bottom of the 24-to-30 month guideline range, followed by two years' supervised release. This appeal followed.

**II.**

Defendant contends that his due-process rights were violated when the district court relied solely on the hearsay testimony of Detective Boller at the revocation hearing instead of hearing directly from Hampton, the victim. He asserts that the hearsay evidence presented was insufficiently reliable to support the finding that he committed a criminal offense.

We review a district court's revocation of supervised release for an abuse of discretion. *See United States v. Kirby*, 418 F.3d 621, 625 (6th Cir. 2005). The district court may revoke a term of supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015); *United States v. Webb*, 30 F.3d 687, 688–89 (6th Cir. 1994). The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial—guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 367–68 (1970). Revocation hearings are "more flexible than a criminal trial," and courts may rely on any relevant evidence, including hearsay that is proven to be reliable. *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991).

The thoroughness of the testifying witness' own investigation or the extent of his personal knowledge are factors to be weighed by the district judge. *See Kirby*, 418 F.3d at 626–27 (discussing importance of "indicia of reliability"). In *Kirby*, we upheld the district court's revocation of supervised release where the evidence consisted of just one probation officer's hearsay testimony. *Id.* at 626. Here, the detective's testimony reflects that he engaged in an independent and thorough investigation of allegations that defendant had committed crimes while on supervised release. Detective Boller was in charge of the investigation. He personally interviewed the victim, and he personally reviewed surveillance tapes showing the defendant and his vehicle at the store.

Defendant argues that Boller's testimony was unreliable because Hampton had been unable to identify defendant in a photo array and Hampton had failed to appear at some court proceedings, causing the state robbery charge to be dismissed. The district court acknowledged defendant's

arguments, but concluded that Boller's testimony was corroborated by other evidence. First, the surveillance tapes corroborated the victim's description of the suspect and the vehicle. The physical description and the clothes seen in the video matched Hampton's description of the suspect given to Boller immediately after the robbery. Hampton's iPhone was found in defendant's vehicle shortly after the robbery. The surveillance tapes also confirmed that defendant ran away through the back of the store property and over a fence when he saw a patrol car approaching. The district court determined that abandoning his vehicle, wallet and backpack, and then running away from the store upon seeing the police car approach, evidenced a guilty mind on the part of defendant.

Defendant also relies on Federal Rule of Criminal Procedure 32.1(b)(2)(C), Revoking or Modifying Probation or Supervised Release,[2] to undermine reliance on Detective Boller's testimony alone. Under the Rule, a defendant in a revocation hearing "is entitled to . . . an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." We have expressly held that Rule 32.1 does not preclude the district court from considering reliable hearsay evidence in final revocation-of-

---

[2] Federal Rule of Civil Procedure 32.1(b)(2)(C) concerning revocation hearings states:

> (2) Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
>
> . . .
>
> (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; . . . .

The notes to the Rule state:

> Rule 32.1(b)(1)(B)(iii) and Rule 32.1(b)(2)(C) address the ability of a releasee to question adverse witnesses at the preliminary and revocation hearings. Those provisions recognize that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses. The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999); *United States v. Walker*, 117 F.3d 417 (9th Cir. 1997); *United States v. Zentgraf*, 20 F.3d 906 (8th Cir. 1994).

supervised-release hearings. *United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998). Rule 32.1(b)(2)(C) essentially codifies the minimum due process requirements established by the Supreme Court for state parole revocation in *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), and for state probation revocation in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). In *Morrissey* and *Gagnon*, the Court made it clear that the procedures used for revocation of probation and parole should be "flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489; *see also Gagnon*, 411 U.S. at 782–83 n.5.

We conclude that the district court's decision in this case was based on sufficiently reliable evidence. In finding that Detective Boller's hearsay testimony possessed sufficient indicia of reliability, the district court recited the evidence corroborating the testimony. The evidence provided a factual basis for the court's finding that the defendant violated the supervised release conditions by committing a new offense.

We also note that to the extent defendant is arguing that he suffered a violation of his Sixth Amendment right to confront and cross-examine a witness against him (Appellant Br. at 23–25), we have held that *Crawford v. Washington,* 541 U.S. 36 (2004), does not apply to revocation of supervised release hearings. *Kirby*, 418 F.3d at 627. *Crawford* was an interpretation of the Sixth Amendment. The text of the Sixth Amendment specifically states that it applies "[i]n all criminal prosecutions." In *Morrissey*, the Supreme Court observed that "there is no thought to equate . . . [a] parole revocation to a criminal prosecution in any sense." 408 U.S. at 489; *see also Gagnon*, 411 U.S. at 782 ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution . . . ."). This precedent establishes that the protections of the Sixth Amendment do not extend to revocation hearings.

The district court reasonably concluded that Detective Boller's hearsay testimony about the incident was reliable and, in light of its reliability, defendant's need for confrontation of the victim did not outweigh the government's reasons for not producing the victim to testify at the revocation hearing.

Defendant also contends that the district court's revocation of his supervised release was not supported by a preponderance of the evidence. The defendant admitted to the minor violations of not reporting to his probation officer and failing to attend a substance-abuse program, which alone would be sufficient to revoke supervised release. *See* 18 U.S.C. § 3538(e); *United States v. Cofield*, 233 F.3d 405, 408 (6th Cir. 2000). In addition, there was sufficient evidence to establish by a preponderance of the evidence that defendant perpetrated the more serious crime of robbery against Hampton. Sufficiency of the evidence is determined from the totality of the evidence presented, including circumstantial evidence and inference. *See United States v. Garcia*, 758 F.3d 714, 718–19 (6th Cir. 2014). Hampton gave a detailed description of the person who robbed him and his car. Shortly after the robbery, police found an abandoned vehicle that matched the description given by Hampton. The vehicle had a backpack and identification inside that linked it to defendant. Hampton's cellphone was found in the car. Surveillance tapes confirmed that defendant fled the store where the car was located when he saw police approaching. The district court did not clearly err by finding by a preponderance of the evidence that defendant had committed a robbery, thereby violating the terms of his supervised release.

For the foregoing reasons, we affirm the judgment of the district court.