NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0078n.06

Case No. 21-3272

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 22, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JAMAAL DAY, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: MOORE, COLE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Jamaal Day violated his supervised release conditions for a third time. The district court sentenced him above the Guidelines range. Day appeals, arguing that the sentence is substantively unreasonable. We disagree and AFFIRM.

I.

Day's extensive criminal history includes convictions for domestic violence, breaking and entering, robbery, attempted escape, and drug trafficking. His three instances of supervised release violations are the focus of this appeal.

In 2012, Day pleaded guilty to possessing a firearm as a felon. The district court sentenced Day to 80 months' imprisonment plus three years of supervised release. Day served his prison term and began supervised release in August 2018. But within a year, Day had already violated his release conditions. He failed to submit to mandatory drug testing no fewer than five times. And he

failed to comply with the requirements of the Code-A-Phone call-in program. So the district court handed down another sentence: eight months' imprisonment and 24 months of supervised release.

Day's second supervised release, which began in March 2020, didn't go any better. Day failed to submit to drug testing three times. And he tested positive for amphetamines, methamphetamines, and cocaine. So in December 2020, the district court again revoked Day's supervised release. With his criminal history category pegged at a level VI, Day faced a Guidelines range of eight to 14 months' imprisonment. Confronted with the prospect of more prison time, Day explained that he "just [had] a drug problem that [he] need[ed] help with." (R. 66, Dec. 11, 2020 Hr'g Tr., PageID 284.) And he asked the court to "please give [him] some help with this drug problem." (*Id.* at PageID 285.) The court chose to give Day another chance. In lieu of prison, it continued Day's supervision and placed him in a 90-day inpatient drug treatment program. But Day was warned: "If you fail that program, you test positive for drugs, if you proceed down the same path, you will come back here for another violation. If that happens, I will impose a two-year statutory maximum." (*Id.* at PageID 288.) Day said he understood.

At the end of 2020, Day entered the Meridian Treatment Center. But after about 30 days, Day absconded from the treatment center without permission, only to be apprehended shortly thereafter.

Finding himself before the district court once again, Day sought a within-Guidelines sentence. To that end, Day emphasized that he had still managed to make it through 30 days of his treatment program. And he explained that he walked away from the treatment center to deal with "some family issues." (R. 64, Mar. 16, 2021 Hr'g Tr., PageID 271.) More specifically, Day claimed that his family was receiving threats from family members of someone who had been killed by his fiancé's son. And so, Day claimed, he tried to secure a transfer to a treatment center closer to home.

When his fiancé found out that he wouldn't get a transfer after all, Day explained, she went into premature labor. That is when Day decided to abscond.

The court began by noting that Day's criminal record is "extensive, to say the least." (*Id.* at PageID 273.) Then it emphasized that Day "made a conscious choice to walk away from drug treatment." (*Id.* at PageID 274.) This, after the court gave him the "opportunity that [Day] claimed [he] needed so desperately to deal with [his] drug addiction issues." (*Id.* at PageID 273.) The court explained that it had "made it very clear what the consequences would be" if Day flunked the treatment program. (*Id.* at PageID 275.) Day would face the statutory maximum of 24 months' imprisonment—that had been the "agreement." (*Id.* at PageID 273.) Nevertheless, the court went on to say, "[Day] continues to make poor decisions" and "[n]othing that we can do seems to be able to help him with both his drugs and his failure to comply with conditions of supervision." (*Id.* at PageID 275.)

The court also addressed Day's explanation. It reasoned that Day's intervention in his family situation could "lead to further violence in the community." (*Id.* at PageID 275.) As the court saw things, Day's motivation cut *against* his request for a within-Guidelines sentence because it triggered further public protection concerns. "[W]hatever may be going on at home," that was "a matter for law enforcement to address and to deal with." (*Id.* at PageID 273.) It was not, the court emphasized, "for [Day] to go back and then get [himself] involved in some other type of activity, criminal or violent or whatever the case may be." (*Id.*)

And so the court sentenced Day to 24 months' imprisonment. This represented an upward variance of 10 months. The court declined to tack on a supervised release term. It reasoned that "[t]here is nothing more that the probation department can do to assist this defendant, given the efforts that they have made and given the number of violations that he has incurred." (*Id.*)

II.

Sentences "must be both substantively and procedurally reasonable." *United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010). This appeal is about the substantive reasonableness of Day's sentence. "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long[.]" *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Although "an above-guidelines sentence erases any presumption of reasonableness," Day "must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019). Indeed, we "'give due deference to the district court's decision that the § 3553(a) factors' justify the variance." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). And "[w]e may reverse only if we find that the court abused its significant discretion." *Id.*

The district court did not abuse its discretion. That's because this case "presents the classic situation in which imposition of the statutory maximum sentence upon revocation of supervised release is appropriate." *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005). Our precedents are clear: "[A] district court's imposition of an above-Guidelines sentence for a supervised release violation is substantively reasonable when a defendant has repeatedly violated his or her conditions." *United States v. Glass*, 749 F. App'x 434, 441-42 (6th Cir. 2018); *see Kirby*, 418 F.3d at 628 (upholding statutory maximum for defendant who violated her supervised release terms for a third time); *United States v. Brown*, 501 F.3d 722, 726 (6th Cir. 2007) (upholding above-Guidelines sentence after defendant's third revocation hearing); *United States v. Epps*, 655 F. App'x 444, 451 (6th Cir. 2016) (upholding upward variance to statutory maximum for defendant who violated his release terms for a fourth time); *United States v. Puskas*, 391 F. App'x 432, 434-

35 (6th Cir. 2010) (upholding statutory maximum for defendant with a "long history of flouting the terms of his supervised release" (internal quotation omitted).).

These cases are on all fours. Indeed, Day did not just violate his release terms repeatedly. He did so despite the district court's earlier leniency. After his second violation, Day faced a Guidelines range of eight to 14 months' imprisonment. But Day asked for a second chance. The district court gave him that chance, and it permitted Day to sidestep prison altogether. What's more, Day confirmed he understood the trial court when it warned: "If you fail [the treatment] program . . . if you proceed down the same path . . . . I will impose a two-year statutory maximum." (R. 66, Dec. 11, 2020 Hr'g Tr., PageID 288.) But now, Day asks us to force the district court to stick to the Guidelines range—the same Guidelines range that was on the table before the court gave Day his second chance. That's not quite how this works. *See United States v. Williams*, 805 F. App'x 374, 379 (6th Cir. 2020) ("We find that [defendant's] sentence is substantively reasonable because she repeatedly violated the terms of her supervised release even after the district court gave her multiple chances."). The district court's "imposition of the statutory maximum term of imprisonment was more than justified by [Day]'s repeated transgressions." *Kirby*, 418 F.3d at 628.

Day argues that "the district court failed to consider the nature and circumstances of his offense." (Appellant Br. at 11.) More specifically, Day claims that the district court "did not consider . . . his argument that his reason for leaving the drug treatment facility was out of concern for his family." (*Id.*) But this is inaccurate. The district court addressed Day's argument squarely. It emphasized that "whatever may be going on at home, that's a matter for law enforcement to address and to deal with." (R. 64, Mar. 16, 2021 Hr'g Tr., PageID 273.) Indeed, the court highlighted the danger that Day would "get [himself] involved in some other type of activity, criminal or violent" by absconding to deal with his family situation. (*Id.*) As the court saw it, this

dovetailed with the need to protect the public. (*Id.* at PageID 275 ("[I]f [Day] is to be believed, [his intervention] may lead to further violence in the community.").)

At bottom, Day "does not identify any argument that he raised and the district court failed to address." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Instead, Day takes issue with how the district court *interpreted* his argument. In other words, he "asks us to balance the [§ 3553(a)] factors *differently* than the district court did." *Id.* But that is "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *Id*. We will not second-guess the district court's reasoning here. Suffice to say, it's not unreasonable to conclude that someone with Day's criminal history could endanger the public by running away to intervene in a volatile family situation. "Perhaps we would have balanced these factors differently had we been in the district court's shoes. Or perhaps we wouldn't have. But we cannot undertake such an analysis now." *United States v. Graham*, No. 20-6430, 2021 WL 6071504, at *5 (6th Cir. Dec. 20, 2021).

III.

For these reasons, we AFFIRM.