NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0662n.06
Filed: September 5, 2006

Nos. 03-4478/03-4581/03-4598

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| V. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO, EASTERN DIVISION |
| TROY WILLIAMS, | ) | |
| ROHAN A. WILSON, and | ) | |
| MARCELLUS SMITH | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: **BATCHELDER and SUTTON, Circuit Judges; FORESTER, Senior District Judge.**[*]

**KARL S. FORESTER, Senior District Judge.** In this drug conspiracy case, the

defendants-appellants each pleaded guilty and offered testimony at the trial of another co-

conspirator, who was ultimately acquitted. Each appellant now appeals his sentence, imposed

prior to *United States v. Booker*, 543 U.S. 220 (2005), on various bases, as described more fully

below. As to appellant Troy Williams, we VACATE the judgment of the district court and

REMAND for resentencing. As to appellant Rohan Wilson, we AFFIRM both his conviction

and sentence. As to appellant Marcellus Smith, we VACATE the judgment of the district court

_____

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of
Kentucky, sitting by designation.

1

and REMAND for resentencing with further instructions.

## I. GENERAL BACKGROUND

The facts in this case are largely disputed. The appellants were all part of a drug trafficking conspiracy that included other unindicted co-conspirators. All pleaded guilty pursuant to their respective plea agreements and offered various testimony at the trial of Kerven Telsey ("Telsey"), another co-conspirator who received a hung jury verdict. It is somewhat difficult to tell from the appellants' testimony and conflicting statements exactly what happened and who played what role in the conspiracy, but the district court relied on the following basic facts presented in the presentence report drawn from the appellants' plea agreements.

From November 2002 through March 2003, appellant Marcellus Smith ("Smith"), appellant Rohan Wilson ("Wilson"), Tony Green a.k.a. Kevin Haughton ("Green" or "Haughton"), appellant Troy Williams a.k.a. Omar Pitter ("Williams"), Telsey, and Regina Stackhouse conspired to distribute more than 5 but less than 15 kilograms of cocaine. Telsey introduced Smith to Wilson, who then began sending cocaine to Smith. Wilson employed Williams and Green to drive cocaine from Florida to Cleveland, at which point Wilson would fly into Cleveland and meet the drivers at Smith's apartment duplex in Cleveland. At Smith's apartment, Wilson would provide Smith with cocaine to distribute to his customers, with Wilson, Green, and Williams all selling various amounts of cocaine to various customers.

On March 20, 2003, officers from the Cleveland police department and the FBI entered the upper apartment of Smith's duplex at 12613 Forest Avenue pursuant to a search warrant. As they entered, the officers discovered that the second floor residence was occupied by Regina Stackhouse and six other women. Officers then knocked on the first floor entrance and observed

Wilson attempting to exit through the first floor window.  Later investigation revealed that before police entered the apartment, Smith had seen cocaine in a box on the living room floor, and as the police started shouting, he ran to his bedroom to hide his handgun, which the police later found under his bed.  Police secured the lower apartment and identified and detained Telsey, Smith, Wilson, Green, and Henry Smith Jr. (who was not named in the indictment).  A search of the lower apartment resulted in the recovery of a number of items consistent with drug dealing.  The next day, officers arrested Williams at a Super 8 motel where Williams consented to a search of his suitcase, in which officers discovered a large amount of cash wrapped in cellophane.

## II. TROY WILLIAMS

### A.

On April 22, 2003, Williams and four others were named in a six-count indictment for conspiracy to distribute cocaine.  Williams was named only in Count 1, alleging that he had joined in a conspiracy to distribute more than 5 kilograms of cocaine in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  During the conspiracy, Williams, a Jamaican national illegally residing in Florida, drove cocaine and money between Florida and Cleveland, Ohio.

On June 5, 2003, Williams entered a guilty plea to Count 1 of the indictment, in which he agreed to cooperate with the government in exchange for the government's recommendation, pursuant to United States Sentencing Guideline ("Guideline") § 5K1.1, that his offense level be reduced up to four offense levels as credit for substantial assistance.  As noted above, several of the co-conspirators also pleaded guilty, but Telsey stood trial.  Pursuant to his plea agreement, Smith testified as a government witness in Telsey's trial, which ended in a hung jury, and the court declared a mistrial.  Prior to sentencing, Williams asked the district court to apply a four-

3

level downward adjustment under the "safety valve" provisions of 18 U.S.C. § 3553(f) and Guideline § 5C1.2, pursuant to the plea agreement, in order to avoid the mandatory minimum sentence. The government opposed the motion, arguing that Williams perjured himself at Telsey's trial and therefore had forfeited a safety valve reduction. The district court then *sua sponte* added two offense levels for obstruction of justice, raising Williams's adjusted offense level to 34. The district court summarily denied Williams's request for a two-level downward adjustment for his minor role in the offense, but awarded a three-level reduction for acceptance of responsibility and a two-level reduction under the safety valve provisions.

The district court ultimately calculated the total adjusted offense level to be 29, with a criminal history category of I. Operating under the Guidelines prior to *United States v. Booker*, 543 U.S. 220 (2005), the sentencing range was 87 to 108 months. Treating the Guidelines as mandatory, the district court sentenced Williams to 96 months, with 5 years of supervised release and deportation.

Williams appeals his pre-*Booker* sentence under the then-mandatory guidelines, and specifically challenges the district court's *sua sponte* two-level enhancement for obstruction of justice and denial of a reduction for his role in the offense.

**B.**

Williams first argues that the district court's judge-found facts increasing his Guidelines range by two offense levels for obstruction of justice violated his Sixth Amendment rights. The district court applied the enhancement *sua sponte* and without any apparent findings of fact. The government concedes that "[t]he district court could not have imposed these enhancements based solely on the facts agreed upon in the[] plea agreement[]." Thus, the government agrees with

4

Williams that we should vacate his sentence and remand the case to the district court for resentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005). Inasmuch as the government has conceded this point, we VACATE Williams's sentence and REMAND to the district court for resentencing specifically in light of *Booker*, this court's post-*Booker* precedents, and the sentencing factors listed in 18 U.S.C. § 3553(a). Based on this, we need not review Williams's other assignments of error.

## III. ROHAN WILSON

### A.

As a member of the drug-related conspiracy described above, the government charged Wilson in Counts 1 and 4 with violating 21 U.S.C. § 846. Initially, Wilson entered a plea of not guilty before pleading guilty on July 8, 2003, after the jury had been selected for his trial. Wilson pleaded guilty to a drug quantity of between 5 and 15 kilograms of cocaine, which called for a minimum mandatory sentence of 120 months. In pleading guilty, Wilson did not have a written plea agreement. Rather, Wilson listened to the government's recitation of the facts in support of the indictment and then, when asked by the district court, Wilson agreed with the facts as stated.

The government stated, and Wilson agreed, with the underlying factual scenario regarding the conspiracy described above. Specifically, the government stated that "Mr. Wilson helped coordinate the delivery of cocaine" and "he was also in charge of the money that was received." The district court, after explaining the sentencing scheme to Wilson so that he understood the likely penalties for his pleading guilty, read directly from Counts 1 and 4 of the indictment which included "intent to distribute more than 5 kilograms of . . . cocaine."

The district court sentenced Wilson to the statutory mandatory minimum of 120 months

based on the quantity of cocaine found. Wilson argued below and argues here that he should have been awarded a downward adjustment for his minor role in the conspiracy and that he was eligible for the safety valve, so as to reduce his mandatory minimum sentence. In response, the government argued that Wilson did not play a minor role in the conspiracy, but was one of its leaders. Thus, the government maintains that Wilson is ineligible for the safety valve under § 5C1.2(a)(4), under which the district court must find that the defendant "was not an organizer, leader, manager, or supervisor of others in the offense . . . ."

In a written memorandum opinion and order entered prior to Wilson's sentencing hearing, the district court denied Wilson the safety valve provision because of his role in the offense and for his use of a handgun in retrieving drugs from the car. At sentencing, the district court relied on its earlier memorandum opinion and its reasoning therein in declining to apply the safety valve, based on the credible testimony of Haughton and Smith, and further found by a preponderance of the evidence that Wilson was using the handgun in retrieving the cocaine from the car, and that he was a supervisor of Haughton and Williams in the conspiracy to sell cocaine as charged in Count 1 of the indictment.

At sentencing, the district court noted that the presentence report began with a base offense level of 32. Referring to its own initial finding regarding the handgun, the district court noted that Wilson was involved with the use of the pistol found at the scene, but decided *not* to add two offense levels for the firearm. Instead, the district court discussed the appropriate level adjustments for both acceptance of responsibility and Wilson's role in the offense. The district court added two levels for Wilson's role in the offense – apparently based on the credible testimony of the co-conspirators – and subtracted three levels for accepting responsibility,

6

leaving Wilson a total adjusted offense level of 31. The district court recognized that Wilson had no criminal history, so under the Guidelines Wilson's sentencing range was 108 to 135 months. However, because of the statutory mandatory minimum, Wilson's ineligibility for the safety valve reduction, and the unavailability of a reduction for substantial assistance, the district court determined that the true range for Wilson, within the court's discretion, was between 120 and 135 months. The government requested the mandatory minimum 120 months, which the district court ultimately imposed.

On appeal, Wilson appeals his pre-*Booker* sentence and specifically objects to both the safety valve denial and the enhancement for his role in the offense.

**B.**

**1.**

Wilson first asks to withdraw his guilty plea on the ground that he did not enter a knowing and voluntary plea based on his lawyer's ineffective assistance of counsel. Specifically, he alleges that his trial counsel failed to warn him of the implications of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and his Sixth Amendment right to a jury finding on sentencing enhancements. He also argues that he should be resentenced under *Booker* because he was sentenced under the mandatory sentencing scheme. We hold that these arguments lack merit.

First, to the extent that Wilson asserts an ineffective assistance of counsel claim, this court does not consider such a claim for the first time on direct appeal. *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997); *United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir. 1993) (holding that such claims "are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue"). We see no

reason to depart from that standard practice in this case.

Wilson also makes a Sixth Amendment challenge to his sentence under *Booker*. Wilson was sentenced to the statutory mandatory minimum of 120 months, and the district court's two-level enhancement for Wilson's role in the offense did not result in an increased sentence. As the government notes, Wilson could not receive a sentence lower than 120 months on remand. Wilson concedes this on appeal, noting that "Wilson[,] now faced with the binding precedent in *Booker*[,] is stuck with a 120 month sentence and no chance of anything less without the benefit of [the safety valve]." Moreover, defense counsel admits that "[t]he release of *Booker* and its application to this case appears to preclude a sentence of anything less than the 120 month minimum mandatory sentence." As this court stated in *United States v. Katzopoulos*, 437 F.3d 569 (6th Cir. 2006), "[e]rroneous application of the Guidelines in violation of the Sixth Amendment requires reversal *unless the error is found to be harmless*." *Id.* at 574 (citing *United States v. Davidson*, 409 F.3d 304 (6th Cir. 2005)). As the government argues and the defense concedes, the "error" of sentencing Wilson under the Guidelines pre-*Booker* is harmless error in this case because Wilson received the lowest possible sentence under the statute and his sentence was not increased pursuant to the then-mandatory Guidelines. Thus, no remand is necessary.

Finally, Wilson argues that his guilty plea should be withdrawn because it was not knowing and voluntary in that he believed that he would be eligible for the safety valve reduction under the then-mandatory Sentencing Guidelines. In other words, he pleaded guilty with the understanding that his case would be determined pursuant to the Guidelines. Wilson argues that he was "never apprised of the implications of Blakely and that the Federal Sentencing Guidelines would be invalidated giving him no chance for a term of less than ten years prior to entry of his

guilty plea." The government correctly refers to the decision in *United States v. Bradley*, 400 F.3d 459 (6th Cir.), *cert. denied*, ___ U.S. ___, 126 S. Ct. 145 (2005), in which this court explained in the context of plea agreements "that where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance." *Id.* at 463. The *Bradley* court also noted the following quote from the United States Supreme Court: "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 464 (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)) (quotations omitted). Wilson alleges no misconduct on the part of the government or his attorney, and thus we find that his claim that his plea was unknowing and involuntary lacks merit.

### 2.

Wilson also argues that the district court improperly relied on the trial testimony of Haughton in a separate proceeding when it denied Wilson's contemplated safety valve reduction. Wilson argues that his counsel, therefore, had no chance to cross-examine Haughton, and this violated his Sixth Amendment right to confrontation.

First, Wilson's recounting of the district court's reliance on Haughton's testimony as it relates to Wilson's sentence is incorrect. Wilson cites the sentencing colloquy in which the district court refers to Haughton's testimony regarding Wilson's involvement with the firearm. Wilson argues that the district court improperly relied on this testimony because defense counsel

could not cross-examine Haughton. However, the district court declined to impose the two-level enhancement for the firearm, and instead imposed a two-level enhancement only for Wilson's role in the offense. Thus, Haughton's trial testimony did not affect Wilson's sentencing or his adjusted offense level.

Second, Wilson relies on the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), and cases involving the import of the Confrontation Clause *at trial* and asks this court to extend *Crawford*'s reasoning to post-conviction sentencing hearings. However, this court has already declined to do so. *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) (holding "that *Crawford* does not apply to revocation of supervised release hearings . . . . *Crawford* was an interpretation of the Sixth Amendment. The text of the Sixth Amendment specifically states that it applies '[i]n all criminal prosecutions.' "). Furthermore, in *United States v. Silverman*, 976 F.2d 1502 (6th Cir. 1992) (en banc), this court held en banc that Confrontation Clause protections do not extend to sentencing hearings. *Id.* at 1514. As the *Kirby* court explained, "[t]his precedent establishes that the protections of the Sixth Amendment do not extend to revocation hearings *or other sentencing proceedings*." *Kirby*, 418 F.3d at 627 (emphasis added). We hold that these cases foreclose Wilson's claims.

Based on the above, we AFFIRM both Wilson's conviction and sentence.

## IV.  MARCELLUS SMITH

### A.

Marcellus Smith ("Smith") was also involved in the conspiracy to distribute cocaine described above. Immediately prior to the police raid on Smith's residence, the green Mazda used to transport the cocaine from Florida to Cleveland was parked outside his house. Co-

defendants Green and Wilson took a handgun owned by Smith to retrieve cocaine from the car. Shortly after they returned to the house with two kilograms of cocaine and the handgun, the police entered and ultimately found the cocaine in the house and the handgun under Smith's bed.

Smith was named in Count 1 of the indictment, charging conspiracy to possess with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, as well as Counts 2 through 4 for possession with intent to distribute cocaine. Following denial of Smith's motion to suppress, Smith pleaded guilty to Count 1 pursuant to a written plea agreement with the government. Pursuant to his plea agreement, Smith also testified at Telsey's trial.

The government argued below and here that Smith's trial testimony contradicted factual statements concerning Telsey to which he had previously stipulated in his plea agreement. Contrary to the plea agreement, Smith denied that Telsey had introduced him to Wilson and that Telsey had never confronted Wilson about the quality of cocaine that Wilson provided to Smith. The government maintains that these inconsistencies contributed to Telsey's mistrial, and the government therefore advised the district court that Smith had failed to cooperate fully as contemplated in the plea agreement.

Smith's plea agreement reads in part as follows:

12.    The defendant agrees to fully cooperate, in this case and any other case indicted as a result of his cooperation, with attorneys for the United States of America . . . by providing complete and truthful information and testimony, if required, concerning unlawful activities of any kind of which the defendant is aware.

. . . .

15.    In the event the defendant fully cooperates with the government, as set forth herein, the government will move the court pursuant to section 5K1.1

of the U.S.S.G. and [18 U.S.C. § 3553(e)], to reduce the defendant's offense level ***up to a total of four offense levels*** to credit defendant for substantial assistance. Accordingly, the defendant's adjusted base offense level would be reduced by up to seven levels (assuming the court gives the defendant four levels for substantial assistance and three levels for acceptance of responsibility).

16. The defendant understands that in the event he does not fully cooperate as set forth herein, the government is released from its obligations under this agreement, including the recommendation to reduce the defendant's offense level ***up to four points*** for substantial assistance, and the defendant has no right to withdraw his guilty plea to the indictment.

17. The defendant further understands and acknowledges that the decision to determine whether the defendant has provided "substantial assistance" as set forth above rests solely with the United States Attorney.

(Emphases added.) The plea agreement also provided that other than drug quantity and a potential reduction under the safety valve provision, no other specific offense characteristics applied.

At sentencing on October 21, 2003, the government did not move for a § 5K1.1 departure despite Smith's testimony in the Telsey trial, and asked that Smith be sentenced at the high end of the Guidelines range. The government explained that its recommendation was "because of Mr. Smith's role in this offense, his continued lying and obstruction of justice, his lying under oath at the trial of Kerven Telsey, his minimization of his own role, his complete denial of the role of his cousin, [and] his complete denial of his drug partnership with Kerven Telsey that was actually stated by Kerven Telsey upon his plea." Smith disagreed with the government's assertion and moved for application of the safety valve provision, which the government opposed.

In a memorandum opinion and order, the district court found that Smith was ineligible for the safety valve reduction because he possessed a firearm in connection with the offense. The

12

district court stated as follows: "Marcellus Smith's testimony to the effect that he supplied the handgun used by Tony Wilson Green, a.k.a. Kevin Haughton, and Rohan Wilson when they made periodic trips to the green Mazda to retrieve a new quantity of cocaine . . . negates the eligibility of Marcellus Smith for the Safety Valve as Smith cannot meet the second requirement [that the defendant did not possess a firearm in connection with the offense]." Thus, the district court found that Smith, "by his own admission, supplied the handgun used by Tony Green and Rohan Wilson." The district court further found that Smith's plea agreement obligated the government to move for a § 5K1.1 downward adjustment unless the government could show that Smith did not "fully cooperate." The district court then scheduled an evidentiary hearing to resolve whether Smith was entitled to a downward departure for substantial assistance.

That hearing was never held. Instead, during the November 25, 2003, sentencing hearing, the government moved for a two-level downward departure for substantial assistance and not the full four-level departure, asserting that Smith had not earned the full four levels due to his inconsistent testimony and failure to divulge all of his illegal drug dealings.

After hearing counsel on the motion, the district court granted the two-level downward departure, stating that its own extensive review of the record led it to limit the adjustment to two-levels. The district court then determined that the Guidelines called for an offense level of 29 which, along with a criminal history category of I, resulted in a sentencing range of 87 to 108 months. The district court then sentenced Smith under the pre-*Booker* Guidelines to 88 months.

**B.**

The government concedes that the district court's reliance on judge-found facts to increase the Guidelines range by two offense levels violated Smith's Sixth Amendment rights.

13

The district court applied a two-level enhancement for possession of a dangerous weapon that could not have been imposed based solely on the facts agreed to in the plea agreement, and the government therefore rightly agrees that this court should vacate Smith's sentence and remand the case to the district court for resentencing consistent with *Booker* and 18 U.S.C. § 3553.

Smith also argues on appeal that the district court erred (1) in failing to determine whether the government breached its plea agreement that required the government to move for a four-level departure for substantial assistance if the defendant fully cooperated; (2) by failing to state its reasons for granting only a two-level departure; and (3) in finding that Smith supplied a firearm to his co-conspirators. While we will remand this matter for resentencing, a review of Smith's claims and the record merits the following observations for the district court to consider on remand.

Taking Smith's challenges in reverse order, as to his third claim, because the government concedes that the district court's enhancement for the firearm possession should be vacated and remanded under *Booker*, this court need not reach the question of whether the district court had sufficient evidence for the enhancement. The district court found Smith in possession of a firearm based upon his own sworn admission that he owned the firearm found in the house and that he knew his co-defendants carried it when transferring drugs from the car to the house. However, the testimony does not make clear that Smith possessed the gun in connection with this offense, only that he was aware that they had carried it. On remand for resentencing, the district court should articulate its reasons for imposing the two-level firearm enhancement and the factual basis for it in accordance with 18 U.S.C. § 3553.

As to Smith's second claim regarding the district court's two-level downward departure

for Smith's "substantial assistance," Smith argues that the district court "did not clearly articulate the reasons for granting the departure and determining the extent of the departure." Smith notes that the district court stated only that it had "studied the record at great length, and after considering the record and after considering the remarks of counsel for the government, the district court will award a downward departure but will limit it to two levels . . . ." The district court did not elaborate on the factors it considered in awarding only a two-level departure, but should do so on remand.

Regarding his first claim, Smith argues that the plea agreement required the government to move for a four-level downward departure for substantial assistance, and that the district court erred in not compelling specific performance of the government's promise. This court reviews a district court's factual findings concerning the content of a plea agreement for clear error. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000).

The district court recognized that under the principles set forth in *United States v. Bryant*, 46 Fed. Apx.778 (6th Cir. Aug. 29, 2002) (unpublished), it had the authority to compel the government to make a substantial-assistance motion because the plea agreement was ambiguous as to whether the government retained its discretion to withhold the § 5K1.1 motion. To that end, the district court scheduled a hearing to determine whether Smith was entitled to a downward departure for substantial assistance. At the sentencing hearing, however, instead of holding an evidentiary hearing on the question, the government immediately motioned for a two-level downward departure. The district court heard from the government and Smith's counsel on the issue and then awarded the recommended two-level downward departure under the terms of the plea agreement. The plea agreement provided for the government's discretion to motion for

"*up to* a four level departure for substantial assistance," with the government having the sole discretion to determine whether Smith had substantially assisted, which mooted the issue of whether Smith was entitled to a downward departure, and left only the question of whether Smith should have received the full four-level departure.

Smith argues that the "up to four levels" language in the plea agreement is ambiguous, and relies on the fact that both the government and Smith understood that the plea agreement "contemplated a four-level reduction." We disagree. The plea agreement clearly allows the government to determine the extent of its motion for a departure "up to four levels," and the determination of whether Smith had offered substantial assistance rested entirely with the government. Both Smith and the district court relied heavily on *Bryant*, which involved a similarly worded plea agreement, but with a notable distinction. In *Bryant*, the plea agreement provided that "the decision to request the 'substantial assistance' departure . . . rests solely with" the government. *Bryant*, 46 Fed. Apex. at 783. This court held that "the 'sole decision' language is not entirely clear," but that it would have been clearer "for example, to state that the government retains the exclusive right to determine whether the defendant has 'fully cooperated.'" *Id.* at 785. Here, the plea agreement's "sole decision" language essentially follows this court's recommendation in *Bryant*, as it provides "that the decision to determine whether the defendant has provided 'substantial assistance' . . . rests solely with the United States Attorney." Thus, the plea agreement makes clear that the government is entitled to determine the quality of Smith's cooperation and assistance, and must implicitly do so in good faith.

Although initially there was some question prior to the sentencing hearing as to whether the government could withhold *any* § 5K1.1 motion under the agreement, once the government

motioned for a two-level departure it is clear that it retained the discretion to recommend "up to" four levels. That both parties understood the plea agreement to "contemplate a four-level departure" is entirely consistent with the language of the plea agreement. The agreement in fact provided for, or "contemplated," a motion for a four-level departure, but its language also clearly "contemplated" a motion for departure of one, two, or three levels. Understandably, Smith hoped for a motion for a full four-level departure, but his signed agreement also clearly contemplated the possibility that the government would find that his testimony did not offer substantial assistance and could adjust the recommended downward departure accordingly and in proportion to the level of assistance. This is precisely what the government did, and the district court accepted it. We reject Smith's attempt to read the "up to" language out of the plea agreement; "up to four levels" simply does not mean "four levels."

Based on the above, we VACATE the judgment of the district court and REMAND for resentencing in accordance herewith.

## V. CONCLUSION

Accordingly, as to WILLIAMS, we VACATE the judgment of the district court and REMAND for resentencing. As to WILSON, we AFFIRM both his conviction and sentence. As to SMITH, we VACATE the judgment of the district court and REMAND for resentencing consistent with the foregoing.