NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0403n.06

No. 15-5946

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jul 15, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LEONTA DEMON EPPS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, ROGERS, and GRIFFIN, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendant Leonta Demon Epps (Defendant) appeals the sentence imposed on revocation of a term of supervised release. He argues that the sentence, which is at the statutory maximum and an upward variance from the advisory Sentencing Guidelines range, is procedurally and substantively unreasonable. We AFFIRM.

**I.**

On September 27, 2012, Defendant pleaded guilty to possessing a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). He was sentenced to 21 months' imprisonment, followed by three years of supervised release. Under the terms of his

supervised release, Defendant was prohibited from: committing another federal, state, or local crime; associating with persons engaged in criminal activity; possessing a controlled substance; and frequenting places where controlled substances are illegally sold or used. Defendant was required to: answer his probation officer truthfully; follow the probation officer's instructions; and notify his probation officer within 72 hours of being arrested or questioned by a law enforcement officer. This court affirmed Defendant's sentence on appeal. R. 47.

Defendant began serving his three-year term of supervised release on August 15, 2013. Within four months, he had tested positive for marijuana on three occasions and failed three more times to submit urine specimens as directed by his probation officer. As a result, on March 13, 2014, the district court granted the probation officer's request for modifying the conditions of supervision with consent of the offender and ordered Defendant to live at a residential reentry center for six months to receive substance abuse treatment and seek employment. R. 49.

Defendant continued to violate the terms of his supervised release, however. On March 20, 2014, one week after the district court signed the modification order, police observed Defendant carrying a stolen television near a burgled residence. Defendant fled, but was later arrested for burglary and theft of property worth over $1,000. He did not inform his probation officer of that arrest. But three weeks later the police did, and they also told the probation officer that on February 6, 2014, Defendant had been issued a citation for criminally trespassing on the Wheeler Homes property.[1] Defendant never informed his probation officer about the criminal trespass citation, despite several subsequent meetings with the officer.

---

[1] The Wheeler Homes property is a Chattanooga Housing Authority property. Defendant does not dispute that he was on the Chattanooga Trespass List.

On April 25, 2014, Defendant's probation officer asked the district court to revoke Defendant's term of supervised release based on his new criminal conduct; his failure to notify his probation officer of his encounters with law enforcement; his association with convicted felons; his unlawful use of marijuana; and his failure to submit urine samples both before and after the modification petition. (R. 50, First Revocation Pet.).[2]

The district court held a revocation hearing on August 21, 2014. (R. 60, First Revocation Hr'g). Defendant admitted that he had violated the terms of his supervised release, but contended that his criminal activity constituted only Grade C violations under the Guidelines because he had been permitted to plead to a lesser offense, misdemeanor aggravated criminal trespass, instead of the charged felony burglary. The district court gave Defendant "the benefit of the doubt" and treated his conduct as a Grade C violation of his supervised release, making the applicable Guidelines range five to eleven months. ID# 205. The court sentenced Defendant to ten months' imprisonment, followed by a two-year term of supervised release with the same conditions as originally imposed. This court affirmed his revocation sentence on appeal. R. 61.

Two days after completing the ten-month term of imprisonment, Defendant was arrested on criminal trespass and possession of marijuana charges. A Chattanooga police officer saw four men, including Defendant, whom she recognized, getting out of a PT Cruiser parked on the Wheeler Homes property. Defendant and the two other passengers fled, but were quickly apprehended and arrested. The police found marijuana in the driver's underwear and in the passenger-side backseat. One of the individuals was a convicted felon.

---

[2] The petitions are titled "Petition for Warrant for Offender Under Supervision."

Defendant reported the arrest to his probation officer the next day, but claimed that he had been on the Wheeler Homes property to meet his son, who had been born while Defendant was in custody. Defendant said that he was walking to a bus afterwards when he was arrested by Chattanooga police officers. Defendant admitted that he had been charged with criminal trespassing and possession of marijuana, but denied any association with the PT Cruiser and the marijuana. Defendant's test result for marijuana was negative.

The probation officer sought revocation of Defendant's supervised release for a second time on March 23, 2015. (R. 62, Second Revocation Pet.). At the hearing, held on May 21, 2015, Defendant admitted that he trespassed but denied associating with a convicted felon. (R. 77, Second Revocation Hr'g). He maintained that after visiting his baby, who was actually residing just outside of the Wheeler Homes, he walked through the project, and got swept up with a group of individuals the police were detaining.

Defense counsel sought leniency, highlighting his negative drug screen. Counsel pointed out that Defendant had become a father figure to his baby, had found a job, and had cut all ties with gangs. Defendant's mother submitted a letter begging the court to give Defendant "another chance." She stated that Defendant had stopped smoking marijuana, had found a job, and was in the process of obtaining his GED. Defense counsel also presented testimony from Christy Kramer, who was starting an adult education program for low-income urban communities in Chattanooga. Kramer indicated that Defendant had been offered an opportunity to participate in GED classes three times a week, once the program was up and running.

Defendant then personally addressed the court. He reiterated the steps he had taken to turn his life around. He asked the court to "see that I'm playing a productive role today, and that

you will see fit to allow me to continue in becoming a law-abiding citizen." ID# 474. The court acknowledged that there had been a violation of the conditions of Defendant's release, but felt that the "best interest of society at this point" was to give him another opportunity "to be a law-abiding, productive, upright, upstanding citizen who never commits a crime again, who works hard, pays his taxes, and supports his dependents[.]" ID# 483-85. The court emphasized that Defendant was still a young man and had contacted Kramer, which could be viewed as "some effort for self-improvement." ID# 483-84. The government responded that Defendant seemed undeterred by his previous revocation of supervised release and ten-month prison term for criminal trespass. ID# 486. Nonetheless, the court decided "to take a chance" on Defendant, believing that the birth of his son had awakened Defendant's sense of responsibility. ID# 488, 489. But the court also warned Defendant that he would face severe consequences if he violated the conditions of his supervised release a third time. The court indicated that a violation would result in incarceration, and made clear that Defendant's sentence would not be according to the Guidelines, but rather the maximum allowable time. ID# 488-89.

The district court then sentenced Defendant to five months of home confinement, during which time he would be allowed to attend school, work, and other places approved in advance by his probation officer. ID# 491. After that, Defendant was to serve a two-year term of supervised release with the same conditions as originally imposed. ID# 491-92.

One week after the second revocation hearing, Defendant refused to give his probation officer his home phone number, which was needed to install location monitoring to ensure Defendant's compliance with the terms of his home confinement. Defendant's probation officer issued a written reprimand and advised Defendant that he was on complete lockdown until the location monitoring equipment could be installed. ID# 428. He was specifically instructed to

answer the phone for curfew checks.  That same evening, however, he failed to answer the phone for curfew checks at 8:15 p.m. and 9:17 p.m.  He failed to answer the phone for a curfew check two days later, on May 31, 2015.  On June 3, 2015, Defendant was ordered to provide proof of employment for a location monitoring schedule change, but failed to provide the information.

On June 24, 2015, Defendant posted a threat on his Facebook page against a cooperating witness. ID# 429.  The post was an excerpt from the transcript of Defendant's original sentencing hearing, in which the United States had reported that "threats [had been] made against a cooperating witness in this case, a Johnny McNabb," and that Defendant was believed responsible.  The post was captioned "POLICE ASS NIGGA (JOHNNY McNABB) AKA {BAY BOY} TRIED TO GIVE A YOUNG NIGGA 100 YEARS FED. . . SMDH BITCH IMA," accompanied by emoticon images of a gun pointed at the head.  ID# 494.  Defendant also associated with gang members on June 20, 2015 and June 25, 2015 through social media.

On June 25, 2015, Defendant's drug screen tested positive for marijuana.  He denied any illegal drug use, however.  His next two urine samples were diluted.  The third sample tested positive for marijuana.  Defendant was ordered to return the next day for more drug testing.  On June 26, 2015, he tested positive for marijuana and admitted that he had smoked marijuana several days earlier.

On July 2, 2015, at 6:38 p.m., Defendant made an unauthorized departure from his residence, allegedly due to a death in the family, and left a message to that effect with his probation officer.  The officer instructed Defendant three times to provide documentation of the death, but Defendant failed to comply.

On July 10, 2015, the probation officer sought revocation of Defendant's supervised release for a third time. (R. 72, Third Revocation Pet.). In addition to listing Defendant's infractions dating from May 28, 2015, the probation officer added that Defendant's behavior and attitude since the May 21, 2015 revocation hearing had been "deplorable," and that Defendant had been uncooperative, rude, and defiant. ID# 430.

The third revocation hearing was held on August 13, 2015. (R. 84, Third Revocation Hr'g). Defendant denied posting any threats on Facebook or associating with gang members. He acknowledged that he had failed to answer the phone for curfew, but indicated that the only phone in his mother's house where he was living was located in the living room and he did not hear it because he was staying in the back of the house. He admitted that he did not submit proof of employment but pointed out that he was employed at Volkswagen for only a short period of time. He agreed that he failed to provide documentation regarding the death of his cousin, but explained that he left a message with his probation officer and that he eventually submitted the obituary. Defendant admitted that he tested positive for marijuana. Defendant personally asked the court for "a little mercy" and "another chance" and requested a sentence within the applicable Guidelines range of 5 to 11 months' imprisonment. ID# 666.

The probation officer testified regarding the allegations she set forth in the petition for revocation. The officer explained that Defendant was "very disrespectful," which made it "much harder to work with him." ID# 669. The officer noted that although in the second revocation hearing Defendant claimed that he had a job waiting for him, he did not ask her to modify his lockdown schedule until June 2, 2015. On June 3, 2015, the probation officer learned that Defendant had not been hired. The probation officer's supervisor stopped by Defendant's home that same day to follow up, but he was not there. He later told the officer that he had been

working all day. The probation officer also described the threatening posts she had viewed on Defendant's Facebook page, as well as Defendant's failure to provide documentation establishing that the deceased was a family member.

The district court made a factual finding that some of the Facebook postings were Defendant's. ID# 698. The court reminded Defendant of its promise at the prior hearing that Defendant would face the maximum sentence if he violated the terms of his supervised release again. ID# 694-95. The court referred to Defendant's disrespectful and uncooperative behavior towards his probation officer and his drug use. ID# 700. The court concluded that these violations established that Defendant was not amenable to supervised release and further that leniency was not appropriate, and sentenced Defendant to the statutory maximum of 24 months. ID# 701.

This appeal follows.

## II.

Defendant argues that his 24-month sentence is procedurally and substantively unreasonable because the district court predetermined that it would impose the statutory maximum sentence for any future violation. Sentences imposed following a revocation of supervised release are reviewed for reasonableness—both procedural and substantive—under an abuse of discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007).

## A.

Defendant contends that the court's reliance on a prior promise to impose a 24-month sentence was procedurally unreasonable because it shows a "total failure to calculate the recommended sentencing range." App's Br. at 11. Procedural unreasonableness includes failing

to properly calculate the Guidelines range. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Defendant asserts that the district court decided at the second revocation hearing on May 21, 2015 what sentence would be imposed if Defendant committed any other violations, regardless of the nature of any future violations, when it stated that it would "throw the guidelines out of the window" and give Defendant "[e]very single year, every single month, every single minute that I've got available." ID# 489-90. And, at the August revocation hearing, the court reminded Defendant that "I gave you my word back in May. How much respect would you have for me if I did not live up to my word?" ID# 700.

Although at the May hearing the district court promised to impose the maximum sentence for any future violation, the district court stated at both the May and August revocation hearing that it had reviewed the probation officer's petition for revocation, ID# 466, 660, creating a presumption that it considered the recommended guideline range. *See United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999). Furthermore, the record shows that the district court actually considered the new violations presented in the probation officer's third revocation petition and testimony, rather than simply defaulting to its prior comments at the May hearing:

> The Court considers the violations here to be very, very serious. There has been continued drug use. There has been not only disrespectful but offensive behavior to probation officers, which demonstrates to this Court that you are not amenable to being supervised. You failed to obey the orders of my probation officer. Many of those orders were designed to make sure that you were doing well on supervision.
>
> So the Court has come to the conclusion that since you are not amenable to supervised release, you should be returned to prison.

ID# 700-01. The court concluded that "because the violations themselves warrant it, the Court is going to impose the maximum punishment that it can." ID# 701. In short, the court clearly indicated that the sentence imposed was based on Defendant's new violations.[3]

**B.**

Defendant also argues that his 24-month sentence was substantively unreasonable because the 24-month sentence was a significant variance from the recommended sentencing range of five to eleven months for Grade C violations. *See* U.S.S.G. § 7B1.4(a) A sentence is substantively unreasonable if the district court acted arbitrarily, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or accorded unreasonable weight to one factor. *United States v. Brown*, 501 F.3d 722, 724 (6th Cir. 2007). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan–Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). A district court has broad discretion to determine what sentence will best serve these statutory objectives, particularly in the "discretion-filled context of supervised release." *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009). In reviewing the substantive reasonableness of a sentence, this court must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.

Defendant asserts that his failed drug test does not automatically warrant a term of imprisonment. *See* 18 U.S.C. § 3583(d) and U.S.S.G. § 7B1.4(a) cmt. n.6 (requiring the court to

---

[3] At the May 2015 hearing, Defendant's supervised release was revoked based on a Grade C violation with a corresponding Guidelines range of five to eleven months, and the court indicated that the statutory maximum sentence would be appropriate for identical conduct in the future (i.e. another Grade C violation). ID# 491.

consider the availability of an appropriate substance abuse program, or a defendant's current or past participation in such programs when a defendant fails a drug test, as an exception to mandatory revocation and imprisonment under 18 U.S.C. §§ 3565(b) and 3583(g)). *See generally United States v. Crace*, 207 F.3d 833, 837 (6th Cir. 2000) (stating that § 3583(d) "restore[s] discretion to the district judge" where a defendant is otherwise subject to mandatory imprisonment under § 3583(g) for failing a drug test). He also asserts that his other violations—failing to timely arrange the installation of a phone line for monitoring, making threats on Facebook, and displaying a disrespectful attitude—were Grade C violations (which the government concedes). *See* U.S.S.G. § 7B1.1(a) (3) (defining C violation); *id.* § 7B1.4(a) (stating that the range of imprisonment applicable upon revocation due to Grade C violations with by a defendant with a criminal history category of III is five to eleven months).

Initially, we note that Defendant did not ask the district court at the hearing to consider § 3583(d). In any event, the district court understood that it was not required to revoke Defendant's supervised release under § 3583(g), because it had already modified his supervised release and ordered Defendant to reside at a residential reentry center for six months to receive substance abuse treatment. *Cf. United States v. Metcalf*, 292 F. App'x 447, 450 (6th Cir. 2008) (holding that the district court "clearly understood" that §3583(g) was not mandatory, because it had previously modified the defendant's supervised release to allow him to enter a reentry center after the defendant failed several drug tests). More importantly, the court clearly recognized that this was not Defendant's first rodeo; this was the *fourth* time he was called to task for violating the terms of his supervised release—once on a request for modification, and three times on petitions for revocation of supervised release. In short, Defendant's repetitive behavior "present[ed] the classic situation in which imposition of the statutory maximum upon revocation

of supervised release is appropriate." *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) (holding that statutory maximum sentence of twenty months, rather than the Guidelines range of four to ten months, was not unreasonable because the defendant had violated the conditions of supervised release on two prior occasions); *see also United States v. Brown*, 501 F.3d 722, 726 (6th Cir. 2007) (holding that a sentence ten months above the recommended Guidelines range was reasonable at the defendant's third revocation hearing).

Defendant's proffered excuses for his violations were, as the government notes in its brief, "unconvincing and signaled an unwillingness to accept responsibility." For example, he claimed that he could not answer his home phone because his mother's residence only had one phone located in the front of the house but he resided in the back. He also explained away the diluted urine samples by claiming that it was a hot day, he had walked a tremendous distance to the courthouse, and he had been drinking water all day to stay hydrated. Moreover, Defendant failed to get and maintain a job and take GED courses, which were integral to Defendant's alleged commitment to becoming an successful citizen and the reason why the court "took a chance" on him.

As the court explained to Defendant at the third revocation hearing:

> When I disregarded the advice of my probation officers and disregarded the arguments of the U.S. Attorney and released you on the spot [during the May hearing], my assumption was that you were going to take advantage of the leniency that you had been shown and you would start demonstrating some changes in your life and you'd also be very, very thankful for what had just happened. . . . But instead of being thankful, you continued to use drugs. And you could not get a job or maintain a job if you're using drugs.

ID# 699-700. The district court's sentence reflects consideration of the pertinent factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3583(g), § 3553(a). Initially, at the first and second

revocation hearings, the district court credited Defendant's youth and potential, as well as society's interest in securing productive, law-abiding citizens. The court's calculus changed, however, after Defendant demonstrated—repeatedly—that he was "not amenable to supervised release." ID# 701. *Cf. United States v. Jones*, 411 F. App'x 768, 770 (6th Cir. 2010) (per curiam) (district court did not abuse its discretion in imposing a sentence substantially above the guidelines range where it found that the defendant "was unable or unwilling to conform to the requirements imposed upon him during supervised release" and found that "'nothing short of a significant additional term of imprisonment'" would satisfy the goals of § 3553(a)). The court further concluded that any additional leniency would "not be beneficial to society." ID# 701. When viewed in totality, it is clear that the district court took into account all of the circumstances in opting to impose the maximum sentence at the third revocation hearing.

In sum, the record supports the district court's determination that the maximum sentence was warranted upon the third revocation of Defendant's supervised release. The district court gave Defendant leniency on two prior occasions, to little avail. Like the defendant in *Kirby*, the sentence "was more than justified by [Defendant's] repeated transgressions." *Kirby*, 418 F.3d at 628.

**III.**

For the foregoing reasons, the judgment of the district court is AFFIRMED.