**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0143n.06

Case No. 19-5645

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Mar 11, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
|  | ) |  |
| AUDREY WILLIAMS, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |

BEFORE: NORRIS, DONALD, and NALBANDIAN, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Audrey Williams challenges her sentence for repeated violations of the conditions of her supervised release. Although her guidelines sentencing range was 7 to 13 months, the district court sentenced her to 30 months' imprisonment after Williams appeared before it for the second time for repeatedly violating the conditions of her supervised release. Williams makes a substantive reasonableness challenge. Because we find that the district court did not abuse its discretion in sentencing Williams to 30 months' imprisonment, we AFFIRM.

## I.

In 2012, Audrey Williams pled guilty to conspiracy to manufacture methamphetamine. Although her guidelines sentencing range was 100 to 125 months, the district court sentenced her to 84 months in prison with four years of supervised release to follow. In 2016, Williams filed a

motion for a sentence reduction after the sentencing guidelines were amended, and the district court lowered her sentence to 76 months under 18 U.S.C. § 3582(c)(2).

Williams left federal custody on February 20, 2018, and her supervised release commenced. Ms. Williams failed to comply with the conditions of her supervised release. She frequently missed meetings with her probation officer. She often lied to her probation officer. She had contact with a convicted felon despite being specifically told not to have contact with him, and she eventually married him without alerting her probation officer. She repeatedly changed residences and phone numbers without advising her probation officer in violation of the terms of her supervised release.

Williams also repeatedly used illicit drugs in violation of the terms of her supervised release. She used methamphetamine and marijuana on the day that she was released from federal custody. She also admitted to using methamphetamine on or about February 25, 2018; March 7, 2018; and August 5, 2018. Williams admitted to using Valium during her supervised release. She also admitted to using marijuana on August 5, 2018.

Williams had issues following other laws during this time as well. After lying to her probation officer about how she got to the probation office one day, Williams eventually admitted that she had driven without a license. Local police also arrested and charged her with public intoxication and assault in Meigs County, Tennessee. On August 10, 2018, Williams' probation officer petitioned for a warrant based on Williams' many violations of the terms of her supervised release, and the district court issued a warrant and ordered Williams to appear for a hearing to determine whether her supervised release should be revoked.

Approximately three months after the issuance of the warrant, the marshals apprehended Williams. She appeared before a magistrate judge on November 15, 2018, and the magistrate

judge held her without bail until her detention hearing about a week later. At her detention hearing, the magistrate judge determined that there was probable cause that Williams had violated the conditions of her supervised release and granted the government's motion to hold her without bail until the supervised release violation could be heard by the district court.

Williams appeared before the district court a month later. She admitted that she violated the terms of her supervised release.

Williams' counsel then tried to explain where she had been for three months. She moved in with the father of her children, Mr. Corrigan. Corrigan was diagnosed with Stage IV lung cancer sometime in September. Williams' counsel averred that Williams had been living with and caring for Corrigan and her children for the three months between August and November. Williams also attended Alcoholics Anonymous (AA) meetings. Williams' counsel also pleaded that Williams wanted to keep caring for Corrigan and her kids, and her counsel stated how important that was to Williams. Williams' counsel asked that the court "consider giving her enough rope to hang herself" by giving her one more shot at supervised release. Her counsel stated that she thought it "would certainly be within this Court's right to take into consideration[,] if there was a future violation[,] the fact that [Williams] did not make good on her word."

The district court gave Williams another chance and sentenced Williams to time served and a term of 47 months of supervised release to follow. The district court also ordered the probation office to file a petition for a warrant if Williams had even a single violation of the terms of her supervised release.

Even though the district court had ordered the probation office to submit a petition if Williams had even a single violation, the district court continued to give Williams chances. As a part of her probation, Williams was required to enroll in the Code-A-Phone (CAP) program, which

is a random drug-testing program. She failed to report for her initial CAP appointment on January 3, 2019. Williams explained to her probation officer that it was simply a misunderstanding, but, following the directions of the district court, her probation officer notified the district court. The district court again gave Williams another chance at supervision.

On January 2, 2019, Williams also informed her probation officer that she had moved out of the house where she had lived with her children and their terminally-ill father. Although, through counsel at her last hearing, she had claimed that she had been living with the father of her children and her children and needed to continue doing so to care for them, Williams testified, at her second revocation hearing, that "[a]t the time that [she] got out in December, the arrangement that" she had planned was to live with her boyfriend Shannon Cobble in Cobble's sister's house and then try to get custody of her kids.

On January 15, 2019, Williams' probation officer visited Cobble's sister's house and met with both Williams and Cobble. Her probation officer asked Cobble if he had any felony convictions, and Cobble initially lied but later admitted to having a felony related to methamphetamine. Cobble lied again and claimed that he was not on probation, but, when Williams' probation officer checked, he found out that Cobble had convictions for promotion of methamphetamine manufacture and felon in possession of a handgun. The probation officer also learned that Cobble was on probation based on a state conviction for evading police; Cobble had also tested positive for methamphetamine in December of 2018 and had an active warrant for a probation violation.

On January 17, 2019, after investigating Cobble, Williams' probation officer told Williams that she could no longer live with Cobble based on his criminal history. Williams' probation

officer went to the district court with this information, but the district court, again, gave Williams another chance and asked the probation officer to wait to file another petition.

At this time, Williams told her probation officer that she would be living with her sister. On February 4, 2019, Williams' probation officer scheduled a home visit with Williams to do a new residence assessment on the next day. Unfortunately, Williams was nowhere to be found the next day when her probation officer went to the residence multiple times. After missing multiple phone calls from her probation officer, Williams finally called back and told her probation officer that she could be there in eight minutes. After about 20 minutes, she arrived in a car being followed by local police. During this encounter, Williams admitted that she had only stayed at the residence a total of four nights from January 17, 2019 to February 5, 2019. Her probation officer also learned from local police that Williams had encountered local police at Cobble's sister's residence on February 5, 2019, where local police had also observed Sudafed and a burner of some sort. Williams never reported this police contact to her probation officer.

On February 8, 2019, her probation officer petitioned for a warrant, and the district court issued the warrant and ordered Williams to appear for a revocation hearing. The marshals arrested Williams on March 21, 2019, and she was detained without bail until her revocation hearing.

At her revocation hearing, Williams maintained that she had not violated the terms of her probation. However, during her testimony at the hearing, she admitted to the substance of several violations. First, she admitted that she smoked marijuana. She also admitted that she had further contact with Shannon Cobble after being ordered not to do so. She again admitted that she had only stayed at the house that she had listed as her residence once every 72 hours. She also gave contradictory testimony in the hearing. At one point she said she did not cuss at her probation officer after he informed her that she had failed to make it to her first CAP appointment but later

admitted that her probation officer was not making anything up and that she had cussed at him over the phone. Even after admitting all of this, Williams still maintained that she did not violate the conditions of her supervised release.

At the hearing, the district court found that she had violated the conditions of her supervised release. The court found that she could not be supervised. The court, however, gave Williams some credit for loving her children. Although the guidelines sentencing range was between 7 and 13 months, the district court announced that it was going to vary upward and sentence Williams to a term of 30 months, six months below the statutory maximum.

Still, the district court gave Williams one more chance. In a last-ditch effort, Williams informed the court that her brother's probation officer was willing to supervise her. The court continued the hearing until Williams' brother's probation officer could appear. About a week later, the district court reconvened the hearing and asked Williams' brother's probation officer if she thought that she could supervise Williams. Unsurprisingly, the probation officer testified that she would not be better at supervising Williams than her current probation officer.

The district court also elaborated on its reasoning for the sentence. First, the court reiterated its belief that Williams could not be supervised by anyone. The court also explained that a variance was necessary to achieve the goals of sentencing, specifically general deterrence. The court explained that there was no specific deterrence in this case because Williams was totally unable to abide by the law, but that the sentence was necessary to deter others from flouting the conditions of supervised release. Finally, the district court entered the judgment, announcing a 30-month sentence with no supervised release to follow.

On appeal, Williams challenges her sentence. Although it is not entirely clear from her brief, which contains little in the way of actual argument and mostly consists of block quotations

from the record and various cases from our Court, it appears that Williams only challenges the substantive reasonableness of her sentence. If we strain to read her brief for an actual argument, she seems to make two: (1) Williams and her probation officer had irreconcilable differences that led to her probation officer being "out to get her," and (2) a 30-month sentence was too long because her guideline range was 7 to 13 months.

## II.

We "review supervised release revocation sentences in the same way that we review all other sentences—under a deferential abuse of discretion standard for reasonableness." *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007) (internal quotations omitted) (quoting *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007)). A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes" of the sentencing factors. *United States v. Vowell*, 516 F. 3d 503, 512 (6th Cir. 2008) (internal quotations omitted) (quoting *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)). When considering substantive reasonableness on appeal, courts should "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . . [I]f the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007). "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals)," usually, because the defendant believes that the district court placed too much weight on some of the sentencing factors and too little on others. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

As to Williams' first challenge—the probation officer was "out to get her"—we find no merit in her argument. First, we are doubtful that this is even a challenge to the substantive

reasonableness of her sentence. This challenge appears more aimed at whether Williams even violated the conditions of her supervised release. Of course, Williams does not challenge that finding on appeal and, furthermore, could not, since she admitted to numerous violations. Even if we assume that this is a challenge to the substantive reasonableness of the sentence, Williams has failed to show that the district court "abdicated [its] decisional role by merely rubber-stamping the recommendation of the probation officer . . . [or that the] improper actions of [the] probation officer resulted in the [district court] making a reviewable sentencing error of a type requiring reversal or remand." *United States v. Espalin*, 350 F.3d 488, 489-90 (6th Cir. 2003).

Williams' second argument—30 months is too long because her guideline range was 7 to 13 months—also fails. First, Williams makes no argument as to how the district court placed too much weight on some sentencing factors over others; instead, her argument is actually as basic as we have previously summarized:

> In the instant case, of course, [Williams] was sentenced to 30 months imprisonment, with no supervised release to follow out of a possible 36 months imprisonment. Her Guideline Range, however, was 7 to 13 months. Her Statutory Maximum was 36 months. Her sentence was unreasonably above the Guideline Range and should be reversed.

Looking at the totality of the circumstances of this case, we find that the district court did not abuse its discretion in sentencing Williams to 30 months in prison. Williams repeatedly and openly violated the terms of her supervised release. She lied to her probation officer; she admitted to using drugs; and she continued to have contact with someone with whom her probation officer had explicitly told her not to interact. All of this occurred after the district court had already given Williams a second chance on her first set of violations of supervised release. The district court continued to give her chances before deciding that Williams could not be supervised. The district court also explained that a variance was necessary for general deterrence so that others would not

think that they could ignore the conditions of supervised release without significant consequences. Finally, the district court gave Williams some credit for loving her children in deciding to stop 6 months short of the statutory maximum.

Our Court has repeatedly upheld above-guidelines sentences for supervised release violations when the defendant has demonstrated an unwillingness to abide by the conditions of supervised release, especially where the district court has previously shown leniency. *See, e.g.*, *United States v. Brown*, 501 F.3d 722, 726 (6th Cir. 2007) (upholding a 10-month upward variance where the defendant repeatedly violated the drug and alcohol-related conditions of his supervised release); *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) (upholding an upward departure where the defendant had repeated violations of the conditions of her supervised release); *United States v. Glass*, 749 F. App'x 434, 441-42 (6th Cir. 2018) (upholding an upward variance of 15 months where the defendant repeatedly violated conditions for supervised release and took "advantage of the court's prior leniency"); *United States v. Epps*, 655 F. App'x 444, 451 (6th Cir. 2016) (upholding an upward variance to the statutory maximum where the defendant repeatedly violated the conditions of supervised release and the district court had been lenient on two prior occasions); *United States v. Puskas*, 391 F. App'x 432, 434-35 (6th Cir 2010) (upholding a 29-month upward departure where the defendant disregarded the terms of his supervised release even after the district court repeatedly attempted to work with the defendant).

Williams has given this Court no reason to depart from precedent. We find that Williams' sentence is substantively reasonable because she repeatedly violated the terms of her supervised release even after the district court gave her multiple chances.

**III.**

For the foregoing reasons, we **AFFIRM** Williams' sentence as substantively reasonable.