RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

 *v.*

DANIEL DALE BARTON, SR.,

      *Defendant-Appellant.*

> No. 25-3364

---

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:23-cr-00519-1—Christopher A. Boyko, District Judge.

Argued:  March 17, 2026

Decided and Filed:  May 6, 2026

Before:  MOORE, GIBBONS, and BLOOMEKATZ, Circuit Judges.

---

### COUNSEL

---

**ARGUED:**  Michael J. Ledenko, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant.  Jennifer J. King, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Michael J. Ledenko, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant.  Jennifer J. King, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

### OPINION

---

PER CURIAM.  After pleading guilty to a child-pornography offense and completing his custodial term, Daniel Dale Barton, Sr.'s term of supervision had an inauspicious start.  He committed a new law violation, traveled outside the Northern District of Ohio without

permission, and was caught possessing an internet-connected tablet that he used to view adult pornography. At a hearing on these violations, the district court offered Barton an ultimatum. Either he could immediately accept a within-Guidelines six-month term of imprisonment, or continue on supervision—with a catch: if Barton committed a future violation, the district court would impose a statutory-maximum two-year term of imprisonment. Barton chose to remain on supervision, but shortly thereafter was caught possessing another internet-connected tablet. At the subsequent violation hearing, the district court made good on its promise to impose the statutory maximum. We hold that when a district court predetermines a supervisee's revocation term of imprisonment at an earlier violation hearing, as the district court did here, the end result is a term of imprisonment that is both procedurally and substantively unreasonable. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

In August 2017, Barton was charged with three child-pornography offenses in the Middle District of Florida. The following year, Barton pleaded guilty to a single count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), and was sentenced to eighty-four months of imprisonment and a fifteen-year term of supervised release. Barton completed his custodial sentence and commenced his supervised-release term in January 2023. The Northern District of Ohio accepted the transfer of jurisdiction over Barton's supervision in September 2023.

The conditions of Barton's supervised release prohibited him from, among other things, committing any criminal offense, traveling outside the Northern District of Ohio without authorization, and possessing internet-connected devices without his probation officer's approval. In addition, Barton's probation officer instructed him to refrain from viewing adult pornography. *See* R. 10 (10/28/2024 Violation Rep. at 5) (Page ID #67).

Barton violated these conditions and his probation officer's instruction. First, in November 2023, local police cited Barton for misdemeanor disorderly conduct while intoxicated after he got drunk, drove to a laundromat near his home, and fell and hit his head. *Id.* Barton

later pleaded guilty to the offense, and the district court imposed a special condition barring him from consuming alcohol. *Id.* at 5–6 (Page ID #67–68). Second, in October 2024, Barton told his probation officer that he had traveled to Pennsylvania to purchase a motorcycle without receiving permission to do so. *Id.* at 5 (Page ID #67). Third, days later, Barton's probation officer conducted an unannounced home visit. *Id.* at 2 (Page ID #64). While inspecting Barton's approved, internet-disabled cell phone, the probation officer discovered that Barton had instructed at least one person to reach out to him via WhatsApp, an internet-based messaging application. Suspicious, the probation officer asked Barton if he owned an unapproved device. Barton denied the accusation, claiming that he used WhatsApp on his approved, internet-connected work computer. This was a lie. Upon further investigation, Barton's probation officer discovered that Barton owned an unapproved, internet-connected tablet which he used for over a year to view adult pornography, sign up for online-dating platforms, and send sexually explicit videos of himself to adult women. *Id.* at 2–5 (Page ID #64–67).

The probation office submitted a violation report to the district court in late October 2024. The report accused Barton of four violations relevant here: (1) possessing an unapproved internet-connected device; (2) viewing adult pornography in violation of his probation officer's instructions; (3) traveling outside the Northern District of Ohio without permission; and (4) committing a new law violation. *Id.* at 1–2 (Page ID #63–64). Barton admitted to these four violations. R. 18 (R&R) (Page ID #98). Because his offense of conviction was a Class C felony, *see* 18 U.S.C. §§ 2252A(b)(1), 3559(a)(3), he faced a statutory maximum of two years of imprisonment. *Id.* § 3583(e)(3); R. 10 (10/28/2024 Violation Rep. at 7) (Page ID #69). Determining that Barton had committed, at most, a Grade C violation and fell within criminal history category I, the probation office calculated an advisory range of three to nine months of imprisonment. R. 10 (10/28/2024 Violation Rep. at 7) (Page ID #69); *see* U.S. Sent'g Guidelines Manual §§ 7B1.1(a)(3), 7B1.4(a) (U.S. Sent'g Comm'n 2023).

The district court held a hearing on the revocation of Barton's supervised release in February 2025. After listening to presentations from the parties and acknowledging the advisory Guidelines range, the district court addressed Barton directly. The district court reprimanded Barton for lying. R. 39 (2/12/2025 Revocation Hr'g Tr. at 22) (Page ID #183). As it began

"thinking more and more about this," however, it "like[d] the fact that [Barton was] employed" and that he was "getting treatment and on the right track." *Id.* The district court then asked Barton a question: "How much do you believe in yourself? Would you bet on yourself complying with every single supervision condition? Would you bet on yourself?" *Id.* Barton said yes, but the district court "want[ed] [Barton] to think hard about what I'm going to tell you." *Id.* The district court then teed up an ultimatum:

> You've got two options here. You can do 6 months, or I can keep you on supervision with additional conditions and if you do one thing wrong, I mean one thing, I will max you, 2 years. 2 years. 6 months now or keep you on supervision and you don't spit on the sidewalk. If you do, I will send you for 2 years. . . . Because you made the choice. You're wearing the robe. You understand me?

*Id.* Barton opted to remain on supervision, and the district court elaborated that it expected Barton "to comply with every single condition every single time." *Id.* at 23 (Page ID #184). If Barton failed to do so, the district court would "not hesitate for a second to ship [him] for 2 years." *Id.* After Barton again indicated that he understood district court's offer, the district court continued Barton's supervision and added a new condition that barred him from viewing "sexually explicit material." *Id.* at 24 (Page ID #185); *see also* R. 19 (Order Cont'g Sup. Release) (Page ID #99–100). In a final warning, the district court promised Barton that any future violation would result in "a very short hearing." R. 39 (2/12/2025 Revocation Hr'g Tr. at 25) (Page ID #186).

Barton did not remain violation free for long. A little over a month after the revocation hearing, Barton's probation officer discovered yet another internet-connected tablet in Barton's home. R. 25 (3/27/2025 Violation Rep. at 2) (Page ID #116). Like the first tablet, Barton used this second tablet to view adult pornography—and had done so since he purchased it in December 2024. The second tablet led to a second violation report and two new violations: (1) possessing an unapproved internet-capable device and (2) viewing pornography. *Id.* at 1 (Page ID #115). Barton admitted to these violations. R. 37 (4/15/2025 Violation Plea Hr'g Tr. at 6) (Page ID #149). Because these were also Grade C violations and Barton remained in criminal history category I, the Guidelines again set an advisory range of three to nine months of

imprisonment, capped by § 3583(e)(3)'s two-year statutory maximum.  R. 25 (3/27/2025 Violation Rep. at 4) (Page ID #118).

At the second violation hearing in April 2025, Barton's counsel gave a brief mitigation presentation centering on Barton's mental-health struggles, and the Government asked the district court to impose a Guidelines term of imprisonment between three and nine months.  R. 38 (4/29/2025 Revocation Hr'g Tr. at 4–7) (Page ID #154–57).  The district court acknowledged the advisory range and the two-year statutory maximum before raising the ultimatum it had posed less than three months earlier.  *Id.* at 8 (Page ID #158).  Describing the choice it offered Barton, the district court declared:

> [I]n effect, I put the robe on you.  I gave you a choice.  I gave you a choice.  I said you could do six months then or continue on supervision because you said you would be betting on yourself, and that you were confident that you would comply. Those were your words, that you were confident you would comply.  I said "fine."  But I said also "think very clearly about this; that if you violate, it is 24 months."  I gave you that choice.  It wasn't my choice; it was yours.

*Id.* at 8–9 (Page ID #158–59).  The district court then asked Barton if he had paused to contemplate the consequences of his actions (he confirmed that he had), chastised Barton for squandering the "break" he had received, and chalked Barton's conduct up to his "impulsiveness" and imperviousness to "help."  *Id.* at 9–10 (Page ID #159–60).  Yet the ultimatum apparently remained top of mind.  The district court announced that "this time there is no choice" as to penalty, explaining that "I would like to say I am a man of my word, so I will hold myself to that."  *Id.* at 10 (Page ID #160).  Adhering to its promise, the district court imposed the statutory-maximum two-year term of imprisonment, followed by a ten-year term of supervised release.  Defense counsel "object[ed] to an above-outside the Guideline sentence." *Id.*  In response, the district court "remind[ed] everybody that it was Mr. Barton's choice, not mine."  *Id.* at 10–11 (Page ID #160–61).  Barton's timely appeal followed.  R. 32 (Notice of Appeal) (Page ID #131).

## II.  ANALYSIS

### A.  Standard of Review

Barton argues that the district court predetermined his post-revocation term of imprisonment, rendering it both procedurally and substantively unreasonable.  We review a post-revocation term of imprisonment "for reasonableness under an abuse-of-discretion standard." *United States v. Morris*, 71 F.4th 475, 480 (6th Cir. 2023).  A district court abuses its discretion when it bases its decision on a legal error, makes clearly erroneous findings of fact, or renders a decision that leaves us with a "definite and firm conviction that [it] committed a clear error of judgment." *Id.* (quoting *United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021)).

The Government asserts that we should review the procedural reasonableness of Barton's post-revocation term of imprisonment for plain error because Barton's objection at the close of the second violation hearing was vague.  The Government's argument, however, assumes that the district court "ask[ed] the parties whether they ha[d] any objections to the sentence just pronounced that ha[d] not previously been raised." *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).  It did not.  R. 38 (4/29/2025 Revocation Hr'g Tr. at 10–11) (Page ID #160–61).  So even if we agreed with the Government that Barton's objection lacked sufficient clarity, the district court's failure to ask the *Bostic* question means that Barton did not "forfeit[] [his] objection[] and thus will not be required to demonstrate plain error on appeal." *Bostic*, 371 F.3d at 872; *see Morris*, 71 F.4th at 481.  We therefore review the procedural and substantive reasonableness of Barton's post-revocation term of imprisonment for abuse of discretion.

### B.  Procedural Reasonableness

We begin with the procedural aspects of Barton's sentencing-predetermination claim.  A post-revocation term of imprisonment, "like an original sentence, must be procedurally reasonable." *United States v. Adams*, 124 F.4th 432, 438 (6th Cir. 2024).  "Procedural reasonableness . . . is concerned with the method by which the [district] court arrives at the sentence." *United States v. Snelling*, 768 F.3d 509, 512 (6th Cir. 2014).  Here, the district court's sentence-in-advance method suffers from at least two distinct procedural deficiencies.

*First*, the district court inverted the proper sentencing sequence.  At the start of "all sentencing proceedings," a district court must find the relevant facts and "correctly calculate[] the applicable Guidelines range," which serve as "the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Solano-Rosales*, 781 F.3d 345, 353 (6th Cir. 2015) ("The Supreme Court has instructed that district courts must *begin* their sentencing decision with the applicable guidelines range . . . ." (emphasis added)).  The district court must then afford the parties the opportunity to advocate for their favored sentences before it considers the relevant 18 U.S.C. § 3553(a) factors.[1]  *Gall*, 552 U.S. at 49–50.  Significantly, the imposition of a post-revocation term of imprisonment must come at the end—not the start—of this sequence.  *See* 18 U.S.C. § 3583(e)(3) (providing that "[t]he court may, *after* considering the" relevant § 3553(a) factors, "revoke a term of supervised release[] and require the defendant to serve in prison all or part of the term of supervised release" (emphasis added)); *see also United States v. Benson*, 195 F. App'x 414, 417 (6th Cir. 2006) (explaining that "it is our role to ensure that the defendant's sentence is a *product* of the requisite process" (emphasis added)).  The district court, however, did not arrive at Barton's term of imprisonment after moving through the proper sentencing sequence at the second violation hearing.  Instead, as the district court made abundantly clear, Barton's two-year statutory-maximum term of imprisonment had been preordained at the first violation hearing.  Simply put, the district court's method was procedurally unreasonable because it was "too much like sentence first, trial afterwards." *United States v. Tatum*, 760 F.3d 696, 697 (7th Cir. 2014).

*Second*, the sentence-in-advance method inherently results in non-individualized terms of imprisonment.  Following the proper sentencing sequence helps ensure that a district court makes "an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.  But there is no way that the district court could have known at the first violation hearing that any future violation, regardless of the circumstances, would warrant a specific term of imprisonment, let alone the statutory maximum. *United States v. Moore*, 30 F.4th 1021, 1025 (10th Cir. 2022).  While it is true that Article III cloaks federal judges with considerable powers, clairvoyance is

---

[1]Only a subset of the § 3553(a) factors are relevant to the imposition of a post-revocation term of imprisonment.  18 U.S.C. § 3583(e); *Esteras v. United States*, 606 U.S. 185, 196–97 (2025).

not one of them.  Barton's term of imprisonment, therefore, did not result from consideration of the relevant § 3553(a) factors—it was simply a product of the district court's promise.  We have held that similarly inflexible sentencing practices are anathema to Congress's mandate for individualization.  For example, we recently held in *United States v. Collins* that a district court violates § 3583(e)(1) when it denies a defendant's motion for early termination of supervised release based on a custom not to consider such motions until the defendant completed half of their supervised-release term.  171 F.4th 830, 835 (6th Cir. 2026).  The "blanket rule" in that case was "not individualized," *id.* at 836, and neither is the sentence-in-advance procedure at issue here.  We thus conclude that Barton's term of imprisonment is procedurally unreasonable.

Resisting this conclusion, the Government contends that the district court's sentence-in-advance method mirrors the sentencing practices condoned in two of our unpublished decisions, *United States v. Glass*, 749 F. App'x 434 (6th Cir. 2018), and *United States v. Epps*, 655 F. App'x 444 (6th Cir. 2016).  In *Glass*, after the defendant committed multiple supervised-release violations, the district court offered her a choice: three months of imprisonment or continued supervision, with the understanding that any future violation would guarantee a two-year sentence.  749 F. App'x at 436.  After the defendant committed eighteen further violations, the district court imposed the sentence it had promised.  *Id.* at 437–38.  We rejected the defendant's argument that the district court had predetermined her sentence, however, because "it did not impose [her] sentence merely on the basis of its prior proclamation."  *Id.* at 440.  To the contrary, the district court "based its sentence on the circumstances presented to it at . . . [the relevant] violation hearing."  *Id.* at 441.

Likewise, in *Epps*, the defendant violated the terms of his supervision, but rather than revoking supervision and imposing a term of imprisonment, the district court imposed a term of home confinement followed by a supervised-release term.  655 F. App'x at 447.  At the same time, the district court warned the defendant that an additional violation would result in revocation and a statutory-maximum term of imprisonment.  *Id.*  The defendant proceeded to commit multiple violations, and the district court imposed the maximum sentence that it had promised.  *Id.* at 447–48.  On appeal, the defendant argued that the district court had impermissibly predetermined his sentence.  *Id.* at 448–49.  Yet the record revealed that "the

[district] court clearly indicated that the sentence imposed was based on [the] [d]efendant's new violations." *Id.* at 449. Crucially, the district court had not "simply default[ed] to its prior comments at the [earlier] hearing." *Id.* Accordingly, we concluded that the defendant's term of imprisonment was not procedurally infirm. *Id.*

The district court's conduct in this case bears only a superficial resemblance to that of the district courts in *Glass* and *Epps*. To be sure, the district courts in *Glass* and *Epps*, along with the district court here, promised to impose a statutory maximum sentence at a prior hearing and then followed through with that promise at a later hearing. Unlike the district courts in those cases, however, the district court here did not "clearly indicate[]" that the term of imprisonment it imposed was based on violation conduct postdating the earlier hearing. *Epps*, 655 F. App'x at 449. Quite the opposite. The district court belabored the fact that Barton's statutory-maximum term of imprisonment was the result of his choice to remain on supervision and the court's concomitant promise at the earlier hearing. *See, e.g.*, R. 38 (4/29/2025 Revocation Hr'g Tr. at 8–9) (Page ID #158–59) ("I put the robe on you. I gave you a choice. I gave you a choice. . . . I said also 'think very clearly about this; that if you violate, it is 24 months.' I gave you that choice. It wasn't my choice; it was yours."); *id.* at 10 (Page ID #160) ("I would like to say I am a man of my word, so I will hold myself to that."); *id.* at 10–11 (Page ID #160–61) ("I will remind everybody that it was Mr. Barton's choice, not mine."). Granted, the district court briefly mentioned Barton's violation conduct, and if we strain, some of its comments seem to nod towards relevant § 3553(a) factors. *See id.* at 9–10 (Page ID #159–60). But "[t]he reasonableness inquiry is 'functional in nature,'" meaning that we "focus . . . not on what the district court said, but 'on what the transcript reveals that the court did.'" *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016) (quoting *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010)). And what the district court did here is plain as day: it "simply default[ed] to its prior comments at the [earlier] hearing" when it imposed Barton's sentence. *Epps*, 655 F. App'x at 449.

Accordingly, Barton's term of imprisonment is procedurally unreasonable.

## C.  Substantive Reasonableness

Barton's term of imprisonment is also substantively unreasonable.  Although sentencing-predetermination claims "speak[] more to procedural reasonableness than substantive reasonableness," "[t]he boundary between these two components of reasonableness . . . is porous." *Glass*, 749 F. App'x at 440.  The district court's sentence-in-advance method straddles the often-hazy line between these two aspects of reasonableness.

When a defendant appeals their post-revocation term of imprisonment, the substantive reasonableness inquiry centers on whether the term of imprisonment "is too long" and "whether 'the [district] court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual.'"  *Morris*, 71 F.4th at 483–84 (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).  And when, as here, the district court imposes an above-Guidelines term of imprisonment, we do not apply a presumption of reasonableness.  *Id.* at 484.

Given our discussion above, we have little difficulty concluding that the district court afforded insufficient weight to the relevant § 3553(a) factors when fashioning Barton's term of imprisonment.  In fact, our review of the record convinces us that the district court afforded the § 3553(a) factors virtually no weight whatsoever.  The district court's overriding concern was keeping its "word," causing it to "hold [it]self to" its promise at the first violation hearing and to impose the statutory maximum.  R. 38 (4/29/2025 Revocation Hr'g Tr. at 10) (Page ID #160).

Barton's term of imprisonment is accordingly substantively unreasonable as well.

\* \* \*

Although we hold today that predetermining a revocation term of imprisonment like the district court did here results in a term of imprisonment that is both procedurally and substantively unreasonable, we underscore the relatively modest reach of our holding.  We do not suggest that district courts cannot pair leniency towards supervisees with admonishments that future violations will not be tolerated.  When a district court chooses to continue supervision rather than revoke it, the district court places trust in the defendant.  A future violation breaches

that trust, and that breach of trust may serve as one factor that the district court uses to calibrate an appropriate sanction for the defendant's violation conduct. *See United States v. Patterson*, 158 F.4th 700, 703 (6th Cir. 2025). What a district court may not do is what the district court did here—rely solely on a previous promise to impose a specified sentence to go ahead and impose that sentence.

Nor do we suggest that district courts must enter revocation hearings as a blank slate. We of course expect district courts to arrive for revocation hearings prepared, and as a result, it is only natural that the district court will have some idea how the proceedings might end. In *United States v. Green*, for instance, the district court remarked that it "really never had any doubt" regarding the applicability of a sentencing enhancement. 167 F.4th 832, 865 (6th Cir. 2026). Looking to *Glass* and *Epps*, we explained that this comment was not indicative of predetermination, as the district court made "clear" findings of fact, "considered the arguments of both parties," and "explicitly acknowledged arguments by [the defendant's] counsel when announcing its decision." *Id.* at 866. Put simply, all we expect from district courts is what happens in the mine-run of cases—for district courts to craft individualized revocation terms of imprisonment after considering the evidence and the arguments presented by the parties.

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.